498 So.2d 814 (1986)
Donnell C. KINZEY
v.
STATE of Mississippi.
No. 56273.
Supreme Court of Mississippi.
November 19, 1986.
*815 Carroll Rhodes, Hazlehurst, for appellant.
Edwin Lloyd Pittman, Atty. Gen. by Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
En Banc.
DAN M. LEE, Justice, for the Court:
On March 14, 1983, Donnell Kinzey was indicted for the possession of more than one ounce but less than one kilogram of marijuana. He was tried in the Circuit Court of Simpson County and, on September 21, 1984, found guilty as charged. On September 28, 1984, Kinzey was sentenced to serve three years in the custody of the Mississippi Department of Corrections.

I.
On February 26, 1983, Andrew Parhams was stopped at a roadblock on Highway 28, just west of Pinola, Mississippi. The roadblock was manned by two Simpson County Sheriff's officers and a Simpson County Constable. Parhams was asked to pull his truck over; he was driving with an expired tag. According to the officers' testimony, Parhams was asked to exit the truck and he complied. While one officer was writing out the traffic citation, two other officers noticed that Donnell Kinzey, the passenger in Parham's truck, was acting in a manner which aroused their suspicion. Kinzey was sitting rigidly in the truck and staring straight ahead. The officers indicated that usually passengers are curious and turn to watch as tickets are issued.
One officer, Johnny Abernathy, approached the truck, opened the door and asked Kinzey to step out and walk to the back of the truck. Kinzey complied but continued to walk down the road so that Abernathy was forced to call upon another officer to stop Kinzey.
On the floor of the truck was a brown paper bag which Abernathy had seen between Kinzey's legs. The bag was open and Abernathy was able to view two plastic bags within it which contained a substance later identified as marijuana. Kinzey and Parhams were both arrested and charged with possession of marijuana.
On March 14, 1983, Donnell Kinzey was indicted by a Simpson County grand jury for possession of marijuana with intent to deliver. Subsequently, on April 8, 1983, the indictment was amended to charge Kinzey with possession of more than one ounce but less than one kilogram of marijuana.
Kinzey was first tried on the charge on October 5, 1983. That trial resulted in a hung jury, and the trial court properly declared a mistrial.
On April 7, 1984, the court sustained the state's motion for a continuance of this case due to a crowded trial docket and the fact that the district attorney was busy with other cases.
On August 31, 1984, Kinzey filed a motion to dismiss the indictment against him on the grounds that he had not been granted a speedy trial and that thereby his constitutional *816 and statutory rights were violated. The motion was denied and the case proceeded to trial on September 21, 1984.

II.

DID THE TRIAL COURT ERR IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS THE INDICTMENT AND THE CASE?
The crux of Kinzey's assertion is that retrial, after a mistrial has been declared, should take place within the 270 days following the first trial in order to satisfy the requirements of the Sixth Amendment to the United States Constitution and Section 26 of the Mississippi Constitution. Kinzey wishes to use the statutory time frame specified in § 99-17-1 Miss. Code Ann., as amended, to establish a reasonable period of time within which retrial should take place. However, that section requires only that indictments be tried within 270 days of arraignment.
The use of § 99-17-1 is foreclosed by Carlisle v. State, 393 So.2d 1312 (Miss. 1981), where this Court stated:
Some states take the position that under speedy trial statutes, a mistrial constitutes a trial and therefore the statutory period begins anew. Other states hold that when a mistrial results, the speedy trial statute has been complied with and the time for retrial is discretionary with the court.
* * * * * *
In Ruester v. Turner, 250 So.2d 264 (Fla. 1971) the Florida Supreme Court summarized the positions taken by other states with reference to speedy trial statutes after a mistrial and stated:
We now agree with those courts that have determined that if a mistrial results compliance with the statutory requirements is satisfied. The time for retrial then becomes a matter of discretion with the trial court, which is to be measured by constitutional standards of reasonableness and fairness under the constitutional speedy trial right... . (250 So.2d at 267).

We agree with the conclusion stated in Ruester and hold that if a mistrial results, or if a case is reversed on appeal for retrial compliance with section 99-17-1 is satisfied. The time for retrial then becomes a matter of discretion with the trial court to be measured by the constitutional standards of reasonableness and fairness under the constitutional right to a speedy trial as enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). In Barker the United States Supreme Court announced a four part balancing test involving the following four factors:
1. Length of delay,
2. Reason for delay,
3. The defendant's assertion of his right
4. Prejudice to the defendant.
The Supreme Court, in Barker, promulgated the balancing test because, "The right to a speedy trial is a more vague concept than other procedural rights. It is, for example, impossible to determine with precision when the right has been denied." The balancing test set forth in Barker must be applied on a case by case basis under the particular facts of the case under consideration.
Id. at 1314. See also Darby v. State, 476 So.2d 1192, 1194 (Miss. 1985). No one of these Barker factors is dispositive; all must be considered together. Burgess v. State, 473 So.3d 432 (Miss. 1985); Bailey v. State, 463 So.2d 1059, 1062 (Miss. 1985).
Kinzey was retried on September 21, 1984,  approximately 352 days after the mistrial of October 5, 1983. On April 7, 1984, the state requested a continuance because of a congested docket. The trial judge continued the cause until the next term of court. Simpson County has three circuit court terms: 1) the 24 days following the 2nd Monday in March; 2) the 24 days following the 1st Monday in September and, 3) the 12 days following the 1st Monday in December. See, § 9-7-37 Miss. Code Ann. (Supp. 1984).
*817 The state's continuance on April 7 was requested during the March term; the continuance was granted until the September term. The state urges that, as the continuance was granted on good cause, the 150 days intervening between the close of the March term and the opening of the September term should be deducted. When this is done (and an additional eight (8) days delay added), a balance of 194 days remains chargeable to the state. Even if the entire 352 day delay is charged to the state, this is the only Barker factor in Kinzey's favor.
The second factor, reason for delay, is justified by prior case law. In both State v. Davis, 382 So.2d 1095, 1097 (Miss. 1980) and Diddlemeyer v. State, 398 So.2d 1343, 1344-1345 (Miss. 1981) overcrowded dockets were considered good cause for continuance.
The third factor, the defendant's assertion of his right, also weighs in the state's favor. Here Kinzey asserted his right to a speedy trial on August 31, 1984  approximately three weeks before his new trial was to begin on September 21, 1984. In Darby v. State, 476 So.2d 1192, 1193-1194 (Miss. 1985), the defendant failed to move to dismiss his indictment until approximately one week before his trial. Such militated against his appeal and his conviction was affirmed.
The final factor, prejudice to the defendant, also favors the state. See, Diddlemeyer, 398 So.2d at 1345 ("[A]ppellant has not shown prejudice, and we find no merit in this contention.") But see, Burgess v. State, 473 So.2d 432 (Miss. 1985) (Lack of prejudice alone insufficient to support affirmance.)

III.

DID THE TRIAL COURT ERR IN OVERRULING THE DEFENDANT'S OBJECTION TO THE TESTIMONY OF THE DEFENDANT'S WITNESS, ANDREW PARHAMS, AS TO EVIDENCE OF OTHER CRIMES WHICH PARHAMS MIGHT HAVE BEEN ENGAGED IN ON THE DAY THAT THE DEFENDANT RODE TO THE GULF COAST WITH HIM?
The exchange of which Kinzey here complains took place as follows:
Q. So, then you and Mr. Kinzey arrived at James' house, you don't know his last name, is that right?
A. (No answer by the witness.)
Q. Sir?
Q. You go to James' house and you and Mr. Kinzey went inside, is that correct?
A. RIGHT.
Q. And y'all rapped a little while?
A. Uh-huh.
Q. Did y'all talk about Marijuana?
A. No, not there.
Q. Not there? Where did you talk about Marijuana?
A. I talked about the Marijuana on the telephone.
Q. Did you talk to him about it when you pulled up to the house?
A. I didn't have to. I told you it was already paid for. All he had to do was put it in my truck.
Q. When did you pay for it?
A. Six hundred dollars ($600.00).
Q. I said, "When did you pay for it?"
A. I paid for it through a different way. I paid for it through engines that he had owed me, you know BY THE REPORTER: Paid for it what?
A. I didn't pay for it in cash money. I paid for it  this guy that wanted the hot rod, he got it for me; and I had  he owned me some money for that and I didn't pay for it  I didn't have to pay him in cash.
Q. All right.
A. He already had it  well, not that day. All I had to do was go down there and pick it up. It was already paid for.
Q. Who owed you the money for the engine?
A. (No answer by the witness.)
Q. Somebody owed you $600.00, is that right?
A. No, not exactly Six Hundred Dollars. He owed me Four Hundred Dollars and I didn't need but two more hundred, you know, to put with it, you know, but I had *818 already gave it to him before I event went down there.

Q. Gave it to who?

A. The guy that brought me the Marijuana.

Q. And who is that?
BY MR. RHODES: Your Honor, I'm going to object to this as this might be evidence of other crimes, which wouldn't be admissible in this case, and it would be irrelevant to this particular case.
BY THE COURT: Well, it wouldn't be evidence of other crimes against the other Defendant, would it?
BY MR. RHODES: Oh, no, Your Honor, Not evidence of other crimes against the Defendant, but other matters not related to this case, and it might prejudice this case by bringing out matters of other cases.
BY THE COURT: Well, I'm going to overrule it at this time.
BY MR. WEBB: Thank you, Your Honor.
Q. Now, let me get this straight. You had done some work for a man, is that right?
A. No.
Q. Somebody owed you some money for an engine?
A. For some engines.
Q. For some engines. But instead of collecting that money, you got the dope instead; is that right?
A. Right.
Q. Now, what I want to know is who was it that owed you money for the engines?
A. (Pause). If I tell you that, I'll be putting myself in jeopardy.
BY MR. WEBB: Your Honor, I'm

BY THE COURT: If he's pleading the Fifth Amendment, I'm going to sustain it. (emphasis added)
Kinzey fails to point out what "other crimes" the foregoing was evidence of. The colloquy related above does not constitute evidence of a separate and distinct offense; it is merely inquiry as to the source of the marijuana later found in Kinzey's possession. Moreover, the exchange related above took place on cross-examination. The state was only following trails already blazed by the defense. This assignment of error is without merit.

IV.

WAS THE VERDICT OF THE JURY AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE AND THE LAW APPLICABLE THERETO?
The testimony of one of the police officers, Deputy Abernathy, was that the brown grocery sack containing the marijuana was open on the floorboard of the truck, and sitting between the legs of Donnell Kinzey. Andrew Parhams contradicted the officer's testimony by claiming that the bag was found, not between Kinzey's legs, but under the seat, and that it was folded shut, not sitting open. In situations such as this, where there is conflicting evidence, the jury will be the sole judge both of the credibility of the witnesses as well as the weight and worth given their testimony. Gathright v. State, 380 So.2d 1276, 1278 (Miss. 1980); Johnson v. State, 452 So.2d 850, 853 (Miss. 1984). The credibility of the witnesses at trial is not a matter for the reviewing court's evaluation. Anderson v. State, 461 So.2d 716, 719 (Miss. 1984); Williams v. State, 427 So.2d 100, 104 (Miss. 1983); Gathright, 380 So.2d at 1378.
In Curry v. State, 249 So.2d 414 (Miss. 1971), this Court stated:
"What constitutes a sufficient external relationship between the defendant and the narcotic property to complete the concept of `possession' is a question which is not susceptible of a specific rule. However, there must be sufficient facts to warrant a finding that defendant was aware of the presence and character of the particular substance and was intentionally and consciously in possession of it. It need not be actual physical possession. Constructive possession may be shown by establishing that the drug involved was subject to his dominion or control. Proximity is usually an essential *819 element, but by itself is not adequate in the absence of other incriminating circumstances. In the instant case, all of the circumstances and these criteria were sufficient to warrant the jury in finding that appellant was in possession of the marijuana.
Id. at 416. Per the testimony of Deputy Abernathy  which the jury apparently believed  the marijuana in the instant case was sufficiently within the dominion and control of Kinzey to have supported the verdict. In addition to proximity (which, by itself, is not adequate to show possession), Kinzey's suspicious behavior prior to the discovery of the marijuana and the fact that he kept walking when ordered to exit the truck, are additional incriminating circumstances. Sufficient to support affirmance.
Finding no error, we affirm.
AFFIRMED.
WALKER, C.J., ROY NOBLE LEE and HAWKINS, P.JJ., and ANDERSON and GRIFFIN, JJ., concur.
ROBERTSON, PRATHER and SULLIVAN, JJ., concur as to Parts I, III and IV and dissent as to Part II.
ROBERTSON, Justice, dissenting:

I.
This case presents an important policy question in the context of a 352 day post-mistrial delay in bringing the accused to trial for a second time, the delay being "justified" only by the claim of "crowded trial dockets" and the "district attorney was busy with other cases." Accepting the "crowded dockets" excuse is wholly at odds with the spirit and thrust of the national speedy trial movement which began in the late 1960s and came to fruition here and elsewhere in the 1970s. It is likewise at variance with our recent pronouncements on the subject. I respectfully dissent from the majority's giving credit to this excuse.
Moreover, it is noteworthy that the case the majority relies upon to let the prosecution get away with this untoward post-mistrial delay, Carlisle v. State, 393 So.2d 1312 (Miss. 1981), was based upon a 1971 Florida case. If the Carlisle court had done its homework, it would have found that Florida had already rejected its old rule before this Court chose to rely upon it.

II.
My target is the April 7, 1984 order wherein the Circuit Court sustained the prosecution's motion for a continuance of the second trial due to a crowded trial docket and the fact that the district attorney was busy with other cases. Our case law simply does not justify the conclusion that overcrowded dockets are "good cause" so as to justify delay in bringing an accused to trial.
In the context of the 270 day rule,[1]State v. Davis, 382 So.2d 1095, 1097 (Miss. 1980), suggests this may be a proper construction of the "good cause" requirement in the statute, but notes that the defendant in no way objected to or protested the continuances grounded upon "overcrowded condition of the court docket." 382 So.2d at 1097. This language is quoted in Brady v. State, 425 So.2d 1347, 1351 (Miss. 1983), although I do not understand the facts of the Brady case to involve a delay in trial due to overcrowded dockets.
We have on at least three occasions discussed the overcrowded dockets phenomenon in the context of a defendant's claim that his constitutional right to a speedy trial has been violated. In Diddlemeyer v. State, 398 So.2d 1343 (Miss. 1981) the defendant was arrested on March 8, 1979, indicted in August of 1979, arraigned on February 15, 1980, "due to a crowded court docket," 398 So.2d at 1344, and put to trial on March 10, 1980. Since the trial was well within 270 days following arraignment, the Court turned to the constitutional question. The defendant was denied relief with the Court merely finding no "unreasonable delay in trial" and no "prejudice." 398 So.2d *820 at 1345. The opinion does not make clear the extent, if any, to which the overcrowded docket factor was considered.
Thereafter, Perry v. State, 419 So.2d 194 (Miss. 1982), also a constitutional speedy trial case, suggests that delays due to overcrowded dockets count against the prosecution in performing the balancing test mandated by Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) although
unintentional delays caused by overcrowded court dockets or understaffed prosecutors are among the factors to be weighed less heavily than intentional delay.
419 So.2d at 199.
Bailey v. State, 463 So.2d 1059 (Miss. 1985) says the same thing, to-wit: delays caused by overcrowded dockets weigh against the prosecution but "not ... heavily." 463 So.2d at 1062.

III.
Mississippi's statutory 270 day rule was not a single state's isolated legislative effort to get a handle on the problem of trial delay in the criminal justice system. In February of 1968 the American Bar Association had approved formal Standards Relating To A Speedy Trial (hereinafter "Speedy Trial Standards"). The broad objective of the Speedy Trial Standards was to eliminate uncertainties surrounding the right to a speedy trial and to determine "how the interest of the defendant and the public in prompt trials should be defined, protected and achieved." See Poulos & Coleman, Speedy Trial, Slow Implementation: The ABA Standards In Search Of A Statehouse, 28 Hastings L.J. 357, 364 (1976).
The project had its genesis in the fact of overcrowded dockets. The raison d'etre of the imposition of specific speedy trial limitations periods was the elimination of "crowded dockets" as a legitimate excuse for trial delay.
The ABA Standards Project and the Speedy Trial Act of 1974, 18 U.S.C. § 3161, were major attempts to alleviate the problem of delayed criminal trials. One of the key sections in the Speedy Trial Standards was the establishment of guidelines determining what constituted a speedy trial. See American Bar Association Project On Minimum Standards for Criminal Justice, Standards Relating To Speedy Trial (Approved Draft, 1968) Part II (hereafter cited as Speedy Trial Standards). This section provided that the defendant's right to a speedy trial should be expressed in terms of days or months running from a specified event. Speedy Trial Standards, § 2.1. Various exclusions for computing time for trial were adopted as well. Speedy Trial Standards, § 2.3. No exclusion for congested dockets was allowed, unless the congestion was attributable to exceptional circumstances. Speedy Trial Standards, § 2.3(b). Indeed, as noted in the Comments to this exclusion
Although it is appropriate to allow added time under certain exceptional circumstances, such as those which result in the unavailability of the prosecutor or the judge at the time the trial is scheduled, delay arising out of the chronic congestion of the trial docket should not be excused. (Emphasis added)
Comments, Speedy Trial Standards, § 2.3(b).
The Comments further indicated a staunch rejection of the policy followed by some states excusing delay based on "good cause" exceptions. Id. Thus, the basic thrust behind adoption of the time limit provisions in the Speedy Trial Standards was a rejection of the rationale that congested dockets constituted justifiable excuse for delay.
This same rationale undergirds the Federal Speedy Trial Act of 1974.[2] Indeed, Congress expressly provided that a continuance *821 shall not be available when the delay is attributable to "general congestion of the court's calendar, or lack of diligent preparation or failure to obtain available witnesses on the part of the attorney for the Government." 18 U.S.C. § 3161(h)(8)(C) (1985). Backlogged dockets were no longer to be an excuse for delay. 47 Fordham L.R. at 722.
The thrust of the speedy trial reform movement has been to alleviate criminal case backlog, and not to establish backlog as an excuse for delay or continuance. This flies in the face of the majority's proposition in the case at bar that congested dockets justify a continuance and toll the tick of the speedy trial clock. Additionally, this policy seriously weakens the effectiveness of the criminal justice system, particularly from the standpoint of public interest. Convictions are lost when there is delay because witnesses and evidence disappear, along with public respect for the criminal justice system. 43 U.Chi.L.Rev. at 668. If the defendant does not provide assurances that he will appear at trial, he must be detained at public expense. Id. Given the budgetary woes of the state today, this is certainly not favorable. On the other hand, if the defendant is released on bail, he may often commit additional crimes before trial or flee from the jurisdiction of the court. See 4 Fordham Urb.L.J. at 353; 43 U.Chi.L.R. at 668-69. Moreover, when trials are postponed, this adds to court congestion. See 4 Fordham Urb.L.J. at 353. Plea bargaining is often employed to alleviate this backlog. Id. Thus, lighter sentences are imposed, and those guilty receive less punishment than they should. Id. This also diminishes the deterrent effect of the criminal justice system on potential abusers. Id.
As a whole, the policy endorsed by the majority turns back the clock. The enforcement of the right to a speedy trial, constitutional and statutory varieties, ensures the fairness and integrity of a criminal proceeding. Contrary to the majority's position, the tendency to postpone trials by granting continuances due to congested dockets only serves to perpetuate the backlog of cases. The majority's position bogs us deeper into the quagmire of congested dockets and deprives society and the criminal defendant of the benefits that are provided as a result of the right to a speedy trial guaranteed by the Mississippi Constitution and the United States Constitution. We should not so shoot ourselves in the foot.

IV.
Further evidence of the weakness of the majority position can be found by an examination of the speedy trial provisions found in the constitutions and statutes of all 50 states. As mentioned in the majority opinion, Miss. Code Ann. § 99-17-1 (1972) provides that one must be tried within 270 days of arraignment. There are only six other states in the Union besides Mississippi that are that generous to the prosecution.[3] The overwhelming majority of the jurisdictions have limitations periods of 180 days or less.[4] Moreover, most start the clock ticking at indictment, not arraignment. As is common knowledge, our 270 day rule is often circumvented by the needless postponement of arraignment. To follow *822 the majority's position, this Court would only extend an already elongated period which allegedly sets a standard for a speedy trial.

V.
The best approach to the mistrial problem, an approach which balances the interests of the defendant, society and the State, is that taken in Florida, the state whose law we purportedly borrowed in the Carlisle case so heavily relied upon by the majority.
Our Carlisle case relies upon Ruester v. Turner, 250 So.2d 264 (Fla. 1971), for the proposition that our 270 day rule does not kick in anew. But Florida has changed its rule. Effective January 1, 1981, Florida enacted a new rule of criminal procedure (West.FSA R.Cr.P.Rule 3.191) which explicitly prescribes a 90 day limitations period for a retrial after a mistrial.
Further, case law elaborates and supports this position taken by Florida. In State v. Jenkins, 389 So.2d 971 (Fla. 1980), the Florida Supreme Court refers to Rule 3.191(g) in the course of its opinion. After noting that when a defendant takes an interlocutory appeal, a remand trial requires only that the state try the defendant within a reasonable time in accordance with constitutional standards, the Court goes on to observe the following:
The situation changes, however, when a defendant is to be retried as a result of a mistrial or the granting of a new trial by either trial court or appellate court action. In these instances, the provisions of the existing Rule of Criminal Procedure 3.191(g) are applicable and require the state to try the defendant within 90 days from the date of the appropriate court order. This is consistent with the new Rule 3.191 effective January 1, 1981.
389 So.2d at 975.
Durrance v. Rudd, 398 So.2d 1012 (Fla. 1st D.C.A. 1981) confirmed the applicability of the 90 day period for retrial after mistrial and further elucidates Florida's position on this issue. Jenkins v. State, 446 So.2d 146 (Fla. 5th D.C.A. 1983) also reiterates the 90 day rule.
I consider present Florida law as worthy of emulation as that we credited in our 1981 Carlisle decision.

VI.
In the end I would analyze this case under the constitutional speedy trial balancing test of Barker v. Wingo, supra. My reading of the Barker factors is:
(1) length of delay: 352 days following a mistrial is prima facie unreasonable; after a mistrial the state should be able to commence a second trial in a far *823 shorter time frame than may reasonably be necessary for the first trial.
(2) reason for delay: overcrowded dockets is an excuse which weighs against the state, although not heavily.
(3) defendant's assertion of his right to a speedy trial: here the defendant made no such assertion, but I consider this one in light of our recognition that "A defendant has no duty to bring himself to trial." Turner v. State 383 So.2d 489, 491 (Miss. 1980); Nations v. State, 481 So.2d 760, 761 (Miss. 1985).
(4) prejudice to the defendant: other than the normal wear and tear on the memories of witnesses, I do not see any material prejudice to the defendant in this case.
On balance, the Barker test suggests that we reverse and render on grounds of violation of the defendant's right to a speedy trial, if not on the 270 day rule. The 352 day post-mistrial delay is grossly excessive. Overcrowded dockets simply do not justify that delay. See Burgess v. State, 473 So.2d 432 (Miss. 1985); Bailey v. State, 463 So.2d 1059 (Miss. 1985); Perry v. State, 419 So.2d 194 (Miss. 1982).
PRATHER and SULLIVAN, JJ., join in this opinion.
NOTES
[1] See Miss. Code Ann. § 99-17-1 (Supp. 1985).
[2] Part of the basis for enacting such legislation was the failure of previous efforts to alleviate the problem of delayed criminal trials. For example, as a reason for enacting the Speedy Trial Act, Congress noted that the Barker v. Wingo test established in 1972 was a neutral test at best which reinforced the legitimacy of delay. Note, Speedy Trials: Recent Developments Concerning A Vital Right, 4 Fordham Urb.L.J. 351, 362 (1976); H.R.Rep. No. 1508, 93d Cong., 2d Sess. 11 (1974), U.S.Code Cong. & Admin.News 1974, p. 7401.
[3] Ala. Const. Art. I § 6 (not greater than six to nine months from arrest); Ark.Crim.R. 28.1, 28.2 (not to exceed nine months from date of charge, arrest or order granting mistrial or new trial); Iowa Crim.R.P. 27 (1983) (within one year after arraignment); La.Code Crim.P.Ann. Art. 578-82 (West 1966) (capital cases, three years from date of institution of prosecution; other felonies two years from date of institution of prosecution); Ohio Rev. Code Ann. §§ 2945.71-73 (Page Supp. 1985) (270 days after arrest); Va. Code Ann. § 19.2-243 (1975) (within nine months from day probable cause found if not in custody, but recognized for appearance in court to answer for such offense.)
[4] Alaska Crim.R.Ct. 45 (120 days from date of charge, arrest or initial arraignment); 17 Ark. Rev.S.R.Crim.P. R8.2 (150 days following indictment if not already in custody; if in custody, 90 or 120 days from date of initial appearance or arraignment, whichever is less); Ariz.Crim.R.P. (90 days); Cal.Pen.Code § 1050 (Supp. 1986) (60 days after indictment or complaint); Colo.Crim. P.R. 48(b) (6 months from complaint, information or indictment); Conn. Gen. Stat.Rev. § 54-82c (1985) (120 days from request of disposition if incarcerated); Fla.R.Crim.P. 3.191 (Supp. 1986) (175 days from indictment); Idaho Code Ann. §§ 19-3501-3506 (1947) (6 months after arrest); Ill. Ann. Stat. Ch. 38, § 1404 (Smith-Hurd 1963) (120 days from custody); Ind.R. Crim.P. 4 (6 months from charge or arrest); Kan. Stat. Ann. § 22-3401  3402 (1974) (90 days after arraignment if jailed; 180 days after arraignment if held on appearance bond); Ky. Rev.Stat. 500.110 (1985) (180 days after request if imprisoned); Mass.Cen.Laws Ann.Ch. 277, § 72-73 (1972) (6 months after indictment); Mont. Code Ann. § 46-13-201, 202 (1985) (6 months from complaint, information or indictment if misdemeanor); Neb. Rev. Stat. § 29-1207 (1985) (6 months from date indictment returned or information filed); Nev.Rev.Stat. § 174.511 (1985) (state, upon demand has right to trial of defendant within 60 days after arraignment); N.Y.Crim.Law § 30.30(1)(a) (McKinney 1981) (6 months within commencement of action); N.C. Gen. Stat. § 15A-701(a)(1) (1975) (120 days from date of arrest, service of criminal process, waiver or indictment, or indictment, whichever occurs last); Ore.Rev.Stat. § 135.747, 135.760, 763 (1975) (indictment or information brought within 30 days after held to answer, upon request of prisoner within 90 days); Pa.R.Crim.P. 1100 (Supp. 1976) (180 days from date of complaint); R.I. Gen. Laws Ann. § 12-13-7 (1969) (6 months after pleading to indictment or information); S.D.Cod.Laws Ann. § 23A-44-5.1 (Supp. 1986) (180 days from date of first appearance before judicial officer on complaint or indictment); Tex.Code Crim.Art. 32A.02 (Supp. 1986) (120 days of commencement of action); Utah Code Ann. § 77-1-6(f), (h) (Supp. 1985) (admitted to bail or entitled to trial within 30 days after arraignment if unable to post bail); Vt.R. Crim.P. 48 (1973) (when in custody, 90 days after arraignment; within six months after arrest in other cases); Va. Code Ann. § 19.2-243 (1975) (5 months from date probable cause found if held in custody); Wash.Super.Ct. Crim.R. 3.3 (1974) (60 days from arraignment if not released from jail pending trial; 90 days if released from jail).