572 So.2d 865 (1990)
George MITCHELL
v.
STATE of Mississippi.
No. 07-KA-59265.
Supreme Court of Mississippi.
December 5, 1990.
*866 Samuel H. Wilkins, Jackson, for appellant.
Mike C. Moore, Atty. Gen., Billy L. Gore, Asst. Atty. Gen., Jackson, for appellee.
Before ROY NOBLE LEE, C.J., and ROBERTSON and BLASS, JJ.
ROBERTSON, Justice, for the Court:

I.
Once again George Mitchell has been put to trial for conspiracy to murder his paramour's husband, and once again the jury has found him guilty. And, once again, Mitchell appeals, but this time the issues are different and the outcome is different, as this time we affirm.

II.
The facts of this Warren County soap opera are summarized in Mitchell v. State, 495 So.2d 5 (Miss. 1986) (Mitchell I), and we will note them here in but abbreviated form.
For some time prior to July of 1983, George Mitchell had been involved with Joyce Wells, and under circumstances, the exact details of which are not in important dispute, the two agreed that Wells' husband, James Earl Wells, should be done away with. Mitchell engaged the services of Clardy (Bootsie) Ellis to have the job done. Things went awry when Ellis proved less than loyal and informed Warren County Sheriff Paul Barrett of the plot.
The plan called for the hit man to do his dirty deed at approximately 7:00 a.m. on the morning of July 22, 1983, at which time James Earl Wells was expected to arrive to turn on the air conditioning at his wife's *867 beauty shop. Joyce Wells arrived at 8:00 a.m., expecting to find her husband dead and to feign shock, but, instead, Sheriff Barrett was waiting and placed her under arrest. Mitchell was arrested later that morning.
Initially, Mitchell and Wells were tried together and each was convicted of conspiracy to commit murder. On September 24, 1986, this Court reversed in Mitchell I and remanded for a new trial. On remand, the Circuit Court severed the cases for trial and, by reason of publicity which had attended the original trial, ordered venue changed to Coahoma County whereupon Mitchell stood trial alone. On October 13, 1987, the jury convicted Mitchell, and the Circuit Court ordered him committed to the custody of the Mississippi Department of Corrections for a term of four years. Miss. Code Ann. § 97-1-1(h) (1972).

III.
Mitchell argues that the evidence adduced at trial was insufficient as a matter of law to establish his guilt of conspiracy to commit murder. He claims that the Circuit Court erred when it denied his post-trial motion for judgment of acquittal notwithstanding the verdict which, of course, was but a renewal of his pre-verdict request for a peremptory instruction of not guilty.
Our scope of review is as limited as it is familiar. See Jones v. State, 567 So.2d 1189, 1191 (Miss. 1990); Lane v. State, 562 So.2d 1235, 1236-37 (Miss. 1990); Brown v. State, 556 So.2d 338, 340 (Miss. 1990); Stringer v. State, 548 So.2d 125, 128-29 (Miss. 1989). For example, in Wetz v. State, 503 So.2d 803 (Miss. 1987), we stated
Our concern here is whether the evidence in the record is sufficient to sustain a finding adverse to... [Mitchell] on each element of the offense of [conspiracy to commit] murder. [Citation omitted] In the present context we must, with respect to each element of the offense, consider all of the evidence  not just the evidence which supports the case for the prosecution  in the light most favorable to the verdict. [Citations omitted] The credible evidence which is consistent with guilt must be accepted as true. [Citation omitted] The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. [Citations omitted] Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. [Citations omitted] We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty. [Citations omitted]
Wetz, 503 So.2d at 808.
Turning to the offense charged, when two or more persons combine or agree to commit a crime, they offend our law of conspiracy. Miss. Code Ann. § 97-1-1 (1972); see also, Rose v. State, 556 So.2d 728, 735 (Miss. 1990); Griffin v. State, 480 So.2d 1124, 1126 (Miss. 1985). A conspiracy is a completed offense, requiring no proof of an overt act in pursuance thereof. Ford v. State, 546 So.2d 686, 688 (Miss. 1989). An individual acting alone and without a partner may not conspire, at least, not in our law's eye. James v. State, 481 So.2d 805, 808 (Miss. 1985). Each conspirator must know that he is entering a common plan and intend to further its common purpose. Ford v. State, 546 So.2d 686, 688 (Miss. 1989); Taylor v. State, 536 So.2d 1326, 1328 (Miss. 1988); McCray v. State, 486 So.2d 1247, 1251 (Miss. 1986). If there be an agreement, knowledge of that agreement follows. McCray, 486 So.2d at 1251. The agreement need not be formal or express, but may be inferred from the circumstances, particularly by declarations, acts, and conduct of the alleged conspirators. Rose, 556 So.2d at 735; McCray, 486 So.2d at 1251; Davis v. State, 485 So.2d 1055, 1058 (Miss. 1986); Griffin, 480 So.2d at 1126.
Mitchell denies there was a conspiracy. He argues that the prosecution failed to present evidence that jurors might lawfully believe proved beyond a reasonable doubt that he and Wells ever agreed to commit a crime or were even acquainted. Mitchell argues that the only evidence tending toward a conspiracy were statements *868 he allegedly made to Ellis and Sheriff Barrett referring to a woman, "old lady," and "bitch." Mitchell seems to suggest that there was a lack of seriousness in his intentions.
Of course, the prosecution's principal evidence establishing Mitchell's guilt is that provided through Clardy Ellis' former testimony, to be noted below. Added to this are Sheriff Barrett's statements that, when he arrested Mitchell on Eagle Lake Road on the morning of July 22, 1983, he asked Mitchell how a family man like him (Mitchell) could get himself involved in such a crime, to which Mitchell replied, "Paul (the sheriff), this woman has pestered me for over a year to do this. I guess I better call a lawyer." Mitchell also stated, "Paul, when you found out I was going to do this, why didn't you tell me and I wouldn't be in this predicament." These statements pack a substantial, incriminating punch.
Beyond this we have in the record the tape recording of Mitchell's conversations with Ellis and Joyce Wells' appearance at the time suggested by the plan to find the "body." In this state of the evidence, it is our best judgment that reasonable jurors could have found that Mitchell had committed the offense of conspiracy to commit murder and have found this fact beyond a reasonable doubt. Ford, 546 So.2d at 688-89; Taylor, 536 So.2d at 1329. On this point, we may only affirm.

IV.

A.
Clardy Ellis was a critical player but (for months leading up to and) at the time of (re)trial he was nowhere to be found. His testimony was by far the most damning the prosecution presented. If on the present appeal Mitchell stresses a point more than any other, it is his complaint that the prosecution was allowed to proceed upon Ellis' transcribed testimony from the first trial, rather than requiring that Ellis be again produced as a live witness. Mitchell argues that this procedure offended rights secured to him by the Sixth and Fourteenth Amendments to the Constitution of the United States, by Article III, Section 26 of the Constitution of the State of Mississippi, and by Rule 802, Miss.R.Ev.  the hearsay rule.
There is no question that the form in which Ellis' testimony was presented brought it within our definition of hearsay. The testimony was presented courtesy of the court reporter in Mitchell I "to prove the truth of the matter asserted." Rule 801(c), Miss.R.Ev. Equally certain is that Mitchell enjoyed no direct confrontation with Ellis at his (re)trial. Cf. Idaho v. Wright, 497 U.S. ___, 110 S.Ct. 3139, 3145-52, 111 L.Ed.2d 638, 651-59 (1990).
The facts are important. It appears that Ellis left Vicksburg after the first trial and has not been seen in Mississippi since. Deputy Sheriff Otho Jones testified that two years prior to (re)trial, Ellis had been located in Cleveland, Ohio. The prosecution had a subpoena issued for Ellis. Armed with this subpoena, Deputy Jones contacted the F.B.I. office in Jackson, the police department in Cleveland, Ohio, and the welfare department in Cleveland. These efforts produced a nibble but no fish. Ellis called Jones about three weeks prior to (re)trial, saying he had no address or phone number where he could be reached as he was living in the streets in and out of Cleveland. Deputy Jones reported that Ellis proclaimed he would never return to Mississippi and that, in Jones' opinion, Ellis was hiding. Jones admitted that Ellis had not been put under bond or placed in custody after declaring his farewell. Deputy Jones said he did not send anyone to Cleveland as he would not know where to look.
Deputy Sheriff Raymond Ellis, one of four siblings to Ellis, testified that he had not seen Clardy Ellis since 1984 and had no idea whether Ellis was still alive. Further Deputy Ellis knew of no other relatives or close friends to Ellis who knew Ellis' address. Deputy Ellis maintained that he had unsuccessfully looked for Ellis for over a year and knew of no way to get in touch with him. He acknowledged relatives in Cleveland but did not know how to get in touch with them. Deputy Ellis testified that prior to the first trial he found Clardy *869 Ellis in Cleveland, but that Ellis had met him and Deputy Jones at a motel. Deputy Ellis had also asked people about Ellis' whereabouts to no avail.
Clardy Ellis' nephew, Mose Hearron, another employee of the Warren County Sheriff Department, also said that he had not seen Ellis since the first trial. Hearron knew of no one who knew Ellis' whereabouts. Hearron had contacted the relatives in Cleveland who said they had not seen Ellis. In Hearron's opinion, Ellis was upset about the publicity he had received in the first trial.
Finally, Sheriff Paul Barrett testified that some three months prior to (re)trial, Ellis had contacted him via long distance telephone. Upon being asked for an address and phone number, Ellis practically hung up the phone. Sheriff Barrett was impressed that Ellis was hiding.
The Court's central inquiry below was whether Ellis was unavailable, a concept in relevant part defined by Rule 804(a)(5) as being
... absent from the hearing and the proponent of his statement has been unable to procure his attendance ... by process or other reasonable means.
The prosecution must prove unavailability. In the analogous Confrontation Clause context, the United States Supreme Court has held the prosecution's burden of proof to require a "good faith effort." Ohio v. Roberts, 448 U.S. 56, 74, 100 S.Ct. 2531, 65 L.Ed.2d 597 (1980). This Court has described this burden as that of a "diligent effort." Stoop v. State, 531 So.2d 1215, 1220 (Miss. 1988). Absence from the state  without more  is not sufficient to establish unavailability. Smith v. State, 247 So.2d 705, 706 (Miss. 1971) (pre-rules decision); but see Parker v. State, 514 So.2d 767, 773 (Miss. 1986) (witness in Germany).
The Warren County Sheriff Department's efforts to locate Ellis and procure his attendance may be itemized:
(1) Contact of the F.B.I. office in Jackson.
(2) Contact of the police department in Cleveland, Ohio.
(3) Contact of the welfare department in Cleveland, Ohio.
(4) Recent notification by Ellis that he had no address or phone number and that he was living in the streets.
(5) Reports that Ellis was periodically in Cleveland.
(6) A lack of friends or relatives, including a brother who served as a deputy sheriff, that knew of Ellis' whereabouts.
(7) A one year search by Deputy Ellis that proved unsuccessful.
(8) Relatives in Cleveland who were contacted and stated that they did not know of Ellis' location.
(9) Strong resistance by Ellis when asked to reveal his location.
Mitchell urges that this Court hold the prosecution has not met its burden because no one was sent to Cleveland as was done prior to the first trial. However, the Warren County Sheriff Department contacted several people in Cleveland who all said that they did not know of Ellis' whereabouts. There is no basis for believing that sending someone to Cleveland would have borne fruit. Furthermore, the prosecution's burden is to demonstrate diligent effort, not to do everything conceivable. We hold that the Circuit Court committed no error when it held the prosecution had established Ellis' unavailability.
Mere unavailability, however, is not enough. Statements of the unavailable, otherwise hearsay, must still fit one of the exceptions of Rule 804(b). See Ponthieux v. State, 532 So.2d 1239, 1246 (Miss. 1988). Rule 804(b)(1), Miss.R.Ev., carries forward an exception long recognized in our law.
Testimony given as a witness at another hearing of the same or a different proceeding, or in a deposition taken in compliance with law in the course of the same or another proceeding, if the party against whom the testimony is now offered, or, in a civil action or proceeding, a predecessor in interest, had an opportunity and similar motive to develop the testimony *870 by direct, cross, or redirect examination.
Miss.R.Ev. 804(b)(1).
Ellis' former testimony falls well within the criteria of this hearsay exception. The transcript of his former testimony reflects extensive cross-examination. On the present appeal Mitchell says he would have cross-examined Ellis on matters that surfaced in pre-(re)trial proceedings, specifically his relationship with members of the Sheriff's Department. Nothing before us suggests any relationship of the quality or calibre that Ellis' credibility before the jury may have been substantially impeached. The testimony comes before us bearing sufficient indicia of reliability that the values that have given rise to our hearsay rules have been more than satisfied.

B.
Our hearsay rules are not mere common law duplicates of the Confrontation Clauses of federal and state constitutions. As the Supreme Court has recently put the point
We have ... been careful not to equate the Confrontation Clause's prohibitions with the general rule prohibiting the admission of hearsay statements. [Citations omitted] The Confrontation Clause, in other words, bars the admission of some evidence that would otherwise be admissible under an exception to the hearsay rule. [Citations omitted]
Idaho v. Wright, ___ U.S. at ___, 110 S.Ct. at 3146, 111 L.Ed.2d at 651.
The former testimony exception expressed in our Rule 804(b)(1) is a "firmly rooted hearsay exception." United States v. McClellan, 868 F.2d 210, 214-15 (7th Cir.1989); United States v. Salim, 855 F.2d 944, 954-55 (2d Cir.1988); State v. Shearer, 164 Ariz. 329, 334-35, 793 P.2d 86, 91-92 (App. 1989).
We hold the prosecution and the Circuit Court used and considered Clardy Ellis' former testimony in a manner wholly consistent with Mitchell's rights under the Confrontation Clause of federal and state constitutions and with this state's hearsay rules.

V.
Mitchell finally argues that he was denied his right to a speedy trial secured by the Sixth and Fourteenth Amendments to the Constitution of the United States and as well by Article III, Section 26 of the Mississippi Constitution. A form of this right is also secured by this state's statutory 270 day rule. Miss. Code Ann. § 99-17-1 (Supp. 1989).
Mitchell points to the fact that Mitchell I was decided on September 24, 1986, reversing his original conviction and that his retrial did not commence until October 12, 1987  some 383 days later. This of course is more than 270 days but our case law establishes that the 270 day rule does not apply to retrials. See Kinzey v. State, 498 So.2d 814 (Miss. 1986). Mitchell is thus relegated to the constitutional standards and we take our text principally from Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972) and progeny. This state's attempts to apply Barker are familiar and need not be repeated. Suffice it to say that upon analysis four Barker factors flesh out essentially in this way.

Length of delay. 383 days in bringing the case to retrial, a factor suggesting support for Mitchell's position.

Reason for delay. At least part of this time can be attributed to the logistics of a change in venue.

The defendant's assertion of his rights. Mitchell apparently did not assert his right to a speedy trial.

Prejudice to the defendant. Mitchell admits that there was no prejudice.
What is particularly important, and somewhat unique to this case, is the Clardy Ellis former testimony issue, an issue that gives flesh to Barker's insight that the right to a speedy trial is unique in "that deprivation of the right may work to the accused's advantage." Barker, 407 U.S. at 521, 92 S.Ct. at 2187, 33 L.Ed.2d at 111. As noted in Part IV above, Mitchell struggles mightily to convince us of the critical importance of having Clardy Ellis as a live *871 eyewitness at trial. This argument pulls the rug from under his speedy (re)trial point. By Mitchell's own standards it was wholly contrary to his interests that the case be forced to trial at an earlier time when Ellis surely would not be available. Not only is the record devoid of any showing of prejudice Mitchell has sustained, it indeed, if we take him seriously, reflects that it was in Mitchell's best interest that the retrial be delayed as both parties searched to secure the attendance of Clardy Ellis at the retrial.
Under these somewhat unique circumstances, we find Mitchell's present point without merit.
CONVICTION OF CONSPIRACY TO COMMIT MURDER AND SENTENCE OF FOUR YEARS IMPRISONMENT AFFIRMED.
ROY NOBLE LEE, C.J., HAWKINS and DAN M. LEE, P.JJ., and PRATHER, SULLIVAN, ANDERSON, PITTMAN and BLASS, JJ., concur.