## IN THE SUPREME COURT OF MISSISSIPPI

### NO. 1999-KA-00327-SCT

*MICHAEL NAYLOR a/k/a MICHAEL WARREN NAYLOR a/k/a "SCOOTER"*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 12/08/1998 |
| TRIAL JUDGE: | HON. LARRY ROBERTS |
| COURT FROM WHICH APPEALED: | LAUDERDALE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | DAVID A. STEPHENSON |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEIRDRE McCRORY |
| DISTRICT ATTORNEY: | BILBO MITCHELL |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/27/2000 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/18/2000 |

### BEFORE PITTMAN, P.J., McRAE AND SMITH, JJ.

### PITTMAN, PRESIDING JUSTICE, FOR THE COURT:

### STATEMENT OF THE CASE

¶1. Michael Naylor ("Naylor") was indicted on May 31, 1995, for the sale of cocaine pursuant to Miss. Code Ann. § 41-29-139 (1993). Because Naylor had been previously convicted of a drug charge, the State sought enhanced sentencing under Miss. Code Ann. § 41-29-147 (1993). Naylor had also been convicted of false pretenses, a felony. The State sought sentencing as an habitual offender under Miss. Code Ann. § 99-19-81 (1994).

¶2. Naylor was tried and found guilty of the sale of cocaine. The Court of Appeals, however, reversed and remanded the case.

¶3. Naylor was again tried in December, 1998. The jury found him guilty of the sale of cocaine, and Naylor was sentenced to 60 years imprisonment as an habitual offender.

### STATEMENT OF FACTS

¶4. Naylor does not challenge the sufficiency nor the weight of the evidence presented in his case. This being the case, this Court adopts the State's recital of the facts in this case.

On May 31, 1995, Mike Lee and Alan Anderson, undercover agents for the Meridian-Lauderdale County Drug Task Force, went to the Royal Inn in Meridian "trying to make different contacts with people" to further their undercover operation.[1] While there, they heard "a girl talking about being thrown out of the bar previous for using cocaine. . ." Lee and Anderson followed this young woman, Lisa Tyrone, to her car, where she used what appeared to be crack cocaine. When the agents asked her whether she could help them obtain cocaine, she replied that they "would have to meet her a little bit later," after she had spoken to "her contact."

Lee and Anderson then "went back to the drug task force and met with Agent Darrell Theall" to discuss "about going to meet this female." Other task force agents were assigned to run surveillance on the planned transaction. Anderson "was wired with a body transmitter," and Lee was issued $200 in recorded and photocopied funds with which to purchase the contraband.

Leaving the pre-buy meeting in Anderson's undercover vehicle, Lee and Anderson met Tyrone at the Dairy Queen. Tyrone introduced them to a black male, Michael Naylor, also known as "Scooter," who informed them that "he could not get powder cocaine but he could" provide "some crack." Naylor and Tyrone then "got into their vehicle" and led Lee and Anderson "through several parts of town" in search of cocaine. Eventually Naylor, accompanied by another black male, returned to "the driver's side of the undercover vehicle" and offered to "sell the rocks for $100." After some negotiation, Naylor agreed to accept $90 for the cocaine. Lee "gave the money to Alan [Anderson], and in turn Alan gave the money to 'Scooter' or Michael Naylor." Naylor actually handed the rocks to Anderson.

## STATEMENT OF THE ISSUE

**I. WHETHER THE LOWER COURT ERRED IN ALLOWING INTO EVIDENCE THE PRIOR TESTIMONY OF ALLEN ANDERSON, A FORMER AGENT OF THE MERIDIAN-LAUDERDALE COUNTY DRUG TASK FORCE, BY FINDING THAT HE WAS "UNAVAILABLE" PURSUANT TO RULE 804(A)(5), MISSISSIPPI RULES OF EVIDENCE, IN VIOLATION OF THE CONFRONTATION CLAUSES OF THE CONSTITUTIONS OF THE UNITED STATES AND THE STATE OF MISSISSIPPI.**

## STANDARD OF REVIEW

¶5. When considering the lower court's decision that a witness is "unavailable," this Court employs an abuse of discretion standard:

The trial judge's determination that the prosecution has employed diligent effort in attempting to obtain the attendance of a witness will not be disturbed on appeal unless this Court finds that the trial judge abused his discretion in determining that a witness was unavailable.

*Russell v. State*, 670 So.2d 816, 827 (Miss. 1996)(citations omitted).

## DISCUSSION

¶6. Naylor contends that the trial court erred when it found Allen Anderson ("Anderson") to be unavailable pursuant to M.R.E. 804(a)(5). Naylor also asserts that the admission of Anderson's former testimony violated his constitutional right to confront the witnesses against him.

## Unavailability

¶7. This Court's first inquiry must be whether Anderson was truly unavailable according to Rule 804. Mississippi Rule of Evidence 804(a)(5) states that a witness is unavailable if the witness "[i]s absent from the hearing and the proponent of his statement has been unable to procure his attendance . . . by process or other reasonable means." M.R.E. 804 (a)(5). This Court has stated that the State must make a "diligent effort" to locate a missing witness. *Russell v. State,* 670 So.2d 816, 827 (Miss. 1996); *Mitchell v. State,* 572 So.2d 865, 869 (Miss. 1990); *Stoop v. State*, 531 So.2d 1215, 1220 (Miss. 1988). However, this does not require the State "to do everything conceivable" to locate the witness. *Russell*, 670 So.2d at 828 (citing *Mitchell*, 572 So.2d at 869).

¶8. The State presented several witnesses who offered testimony regarding the whereabouts of Anderson, as well as the attempts to locate him. Mike Lee, Chief of Police of the City of Forest, testified first. At the time of the incident, Lee, along with Anderson, was an undercover agent with the Meridian-Lauderdale County Drug Task Force. Lee testified that he had not had contact with Anderson for over one year and that he had no idea where Anderson was located at the present time.

¶9. Detective Darrell Theall of the Meridian Police Department also testified. At the time of the incident, Theall was assigned to the drug task force, along with Anderson. Theall testified that he had no idea as to Anderson's whereabouts. The last time that he had any contact with Anderson, Anderson had been employed with the Forest Police Department. As far as Theall knew, Anderson was no longer employed with the Forest Police Department.

¶10. Captain Steven Spears of the Lauderdale County Sheriff's Office then testified. Spears was assigned as unit commander of the East Mississippi Drug Task Force and was Anderson's employer at the time of the incident. Spears testified that the last time he had personal knowledge of Anderson's whereabouts was October, 1997, when Anderson was working for the Forest Police Department.

¶11. Several weeks before the trial, Spears received a subpoena for Alan Anderson. Spears instructed his agents to make an effort in locating Anderson for trial, specifically to use whatever means available. Several of Spears' agents had attempted to contact Anderson's parents, who live in Philadelphia, Mississippi, to try to locate Anderson. Spears testified that one of his agents located Anderson's parents, but they repeatedly refused to reveal Anderson's whereabouts. Several of Spears' agents had contacted the Philadelphia Police Department and the Neshoba County Sheriff's Office in an attempt to locate Anderson. Spears also had two of his agents as well as a Neshoba County deputy sheriff stake out a child care facility that Anderson and his wife were reportedly running in Philadelphia. Anderson never showed up at the daycare.

¶12. Spears was then questioned as to what measures he could have taken to locate Anderson. Because there was no warrant for Anderson's arrest, he could not be placed in the NCIC computer to locate him. Spears did know Anderson's social security number. Although he knew Anderson could be tracked using the social security number, he did not have access to a computer or computer software to do so.

¶13. After Spears testified, the State made a motion to have Anderson's testimony from the previous trial read into evidence. The defense objected, citing that the State had not made the required effort to locate Anderson. After hearing argument from both sides, the trial judge ruled that Anderson was unavailable pursuant to M.R.E. 804(a)(5). The judge stated that the subpoena for Anderson was "signed by a Lauderdale County deputy sheriff as unable to be found after a diligent search and inquiry. . ." The judge, in

his ruling, noted:

> And then you've got the supervising law enforcement officer, the chief so-to-speak, Steve Spears of the drug task force testifying of what efforts they have made to try to locate Mr. Alan Anderson. And if you believe his testimony, they've been unsuccessful in-after going to Neshoba County and talking to the Sheriff's Department and staking out a child care facility for apparently a period of time, trying to talk to neighbors or friends or parents, they've been unable to locate him.

In his final ruling the trial judge stated:

> [Anderson] has not been able to be located to have a witness subpoena served on him and that other reasonable means have been used to try to locate him to get him to court to testify, and those reasonable efforts have been unsuccessful. I personally don't know of anything else the State could do to locate him than what they've already done that falls in the category of being reasonable.

¶14. Naylor cites *Stoop v. State*, 531 So.2d 1215 (Miss. 1988), as authority for the proposition that the judge erred in declaring Anderson unavailable. *Stoop*, however, is easily distinguishable from the case sub judice. In *Stoop*, this Court held that the State's efforts to locate a missing witness, Karen Heathcock, were not enough to satisfy the diligent effort test. *Stoop*, 531 So.2d at 1220. The district attorney contacted the home of Heathcock's estranged husband, Bobby Heathcock, to try to ascertain her whereabouts. The district attorney's office talked only to Bobby's girlfriend, who indicated that she did not know where Heathcock could be located. The district attorney could easily have called Bobby again, but did not do so. Bobby testified at trial that he had known for about five weeks the location of his wife. Interestingly enough, this five week time period encompassed the time when the subpoena was issued, as well as the time in which the district attorney filed its notice of intent to use transcribed testimony. *Id.* By contacting Bobby again, the district attorney would have been able to locate Heathcock.

¶15. In *Russell* this Court held that the attempts made by the district attorney's secretary to locate two missing witnesses was adequate to satisfy the diligent effort test. *Russell v. State*, 670 So.2d 816 (Miss. 1995) The secretary testified that she issued subpoenas to Parchman for one witness. She was informed by Parchman that the witness had been released to Washington County. The secretary contacted Washington County who told her that they were also searching for the witness but that they believed him to be in Illinois. The secretary made no further effort to locate the witness. *Russell*, 670 So.2d at 828.

¶16. Looking at the State's effort through the "diligent effort" window, as well as the efforts in both *Stoop* and *Russell*, the State made reasonable and diligent efforts in attempting to locate Anderson. In summary, agents of the East Mississippi Drug Task Force contacted several law enforcement agencies that Anderson was known to have been either employed by or in contact with. Those same agents contacted Anderson's parents who refused to divulge Anderson's location. The agents also staked out a daycare center that was run by Anderson and his wife in the hopes of serving him when he arrived there. The trial judge said it best:

> I assume they can hire a helicopter and fly around over Neshoba County day and night looking for somebody that looks like Alan Anderson, but that's not reasonable in my mind.

## Hearsay Exception

¶17. This Court must next determine if Anderson's former testimony falls under the hearsay exceptions found in the Mississippi Rules of Evidence. Mississippi Rule of Evidence 804(b)(1) states that "testimony

given as a witness at another hearing of the same or a different proceeding, . . . if the party against whom the testimony is now offered, . . . had an opportunity and similar motive to develop the testimony by direct, cross, or redirect examination" is not considered hearsay if the declarant is unavailable as a witness. M.R.E. 804 (b)(1). Having found that Anderson was unavailable, the trial judge applied Rule 804(b)(1) to the facts of this case in his ruling:

> Under 804(b)(1), this testimony was given by Mr. Anderson as a witness at the other trial [of Naylor on this same charge], and that the defendant [Naylor] had the same or similar motive; that is, Mr. Naylor through counsel, the same or similar motive to develop the testimony of Mr. Anderson on direct, cross and redirect as he would now have if he were live and available to testify as a live witness.

The trial judge then went so far as to redact certain statements made by Anderson due to the ruling by the Court of Appeals reversing the earlier conviction. Anderson's testimony from the previous trial falls within well-recognized exceptions to the hearsay rule.

¶18. Naylor also argues that he was denied his right to confront the witnesses against him pursuant to the United States Constitution and the Constitution of the State of Mississippi. However, as this Court stated in *Russell*:

> The former testimony exception expressed in our Rule 804(b)(1) is a "firmly rooted hearsay exception," *Mitchell*, 572 So.2d 870 (quoting *United States v. McClellan*, 868 F.2d 210, 214-15 (7th Cir. 1989)), and therefore, testimony admitted under Miss.R.Evid. 804(b)(1) does not violate the Confrontation Clauses of the federal and state constitutions. Smith, Womber, and Hawkins' former testimony was given under oath and was subject to thorough cross-examination. . . .

*Russell*, 670 So.2d at 829.

¶19. The trial judge admitted Anderson's former testimony under Rule 804(b)(1). Pursuant to this Court's ruling in *Russell*, Naylor was not deprived of his right to confront Anderson. At the second trial, Naylor had the same attorney who represented him in his first trial. That attorney cross-examined Anderson thoroughly at the first trial, allowing Naylor to confront Anderson pursuant to the Confrontation Clauses of the federal and state constitutions.

## CONCLUSION

¶20. The trial judge did not abuse his discretion in finding Anderson unavailable as a witness and allowing his former testimony to be read into the record. Therefore, the judgment of the Lauderdale County Circuit Court is affirmed.

¶21. **CONVICTION OF DELIVERY OF COCAINE AND SENTENCE OF SIXTY (60) YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. THIS SENTENCE SHALL NOT BE REDUCED NOR SUSPENDED NOR SHALL HE BE ELIGIBLE FOR PROBATION, PAROLE OR ANY TYPE OF EARLY RELEASE AND APPELLANT SHALL PAY A FINE IN THE AMOUNT OF $10,000, LAB FEE AND ALL COSTS.**

**PRATHER, C.J., BANKS, P.J., McRAE, SMITH, MILLS, WALLER, COBB AND DIAZ,**

**JJ., CONCUR.**

1. According to Lee, "[t]he drug task force had received several intelligence reports that stated that there were [sic] possibly narcotics activity going on inside that bar."