754 So.2d 497 (1999)
John D. STREET, Jr. a/k/a John David Street, Jr., Appellant,
v.
STATE of Mississippi, Appellee.
No. 97-KA-01625-COA.
Court of Appeals of Mississippi.
September 21, 1999.
Rehearing Denied December 14, 1999.
Certiorari Denied March 23, 2000.
*499 Sanford E. Knott, Jackson, Attorney for Appellant.
Office of the Attorney General by Pat S. Flynn, Attorney for Appellee.
BEFORE McMILLIN, C.J., DIAZ, AND LEE, JJ.
McMILLIN, C.J., for the Court:
¶ 1. John D. Street was convicted of murder by a Greene County Circuit Court jury in the shooting death of Herbert White. Street has appealed that conviction to this Court and raises five issues that he claims warrant a reversal of his conviction. For reasons we will discuss, we determine the issues to be without merit. Therefore, this Court affirms Street's conviction and ensuing judgment of sentence.

I.

Facts
¶ 2. Herbert White was shot once in the face with a 9mm caliber weapon and his body left on a public road in rural Greene County. The incident apparently took place between 11:15 and 11:45 p.m. on January 2, 1995, since a resident of the area, Claude Dickson, testified to being awakened by the report of a gunshot at about that time. Dickson further testified that, after being awakened by the shot, he observed a vehicle turning around in his driveway. Believing that the gunshot may have been the work of persons involved in illegal deer hunting, Dickson arose, got into his truck, and pursued the vehicle with the aim of obtaining a license plate number. While in pursuit, Dickson observed White's body lying by the roadside. He was unable to obtain a license plate number from the departing vehicle, but did observe the vehicle to be a light-colored Chevrolet of a model year sometime in the 1970's. He also noted that the automobile had a visible amount of rust on the body. Dickson observed that the vehicle appeared to contain three or four individuals.
¶ 3. Dickson alerted law enforcement officers, who arrived to investigate. A deputy sheriff on the scene located and retrieved a spent bullet casing from near the area of the body. The bullet itself was subsequently recovered from White's body.
¶ 4. From Dickson's description of the vehicle, the sheriff's suspicion of possible *500 involvement by Street was aroused. Acting on that suspicion, the sheriff went to Street's residence and took a photograph of a light green Chevrolet automobile showing signs of rust that was believed to be owned by Street. Apparently, however, no contact was made with Street at that time. A short time later, the sheriff, by chance, encountered Street in that same vehicle and discovered that he had painted the vehicle blue.
¶ 5. Further investigation produced information that, during the 1994 Christmas holiday season, Street had been at a friend's house firing a weapon into a tree trunk. Investigating officers recovered a number of spent shell casings from that area and also were able to dig a projectile from the tree trunk. Later forensic tests indicated that the same firearm had discharged the bullets at the house of Street's friend and the bullet that killed White.
¶ 6. Based on this information, investigating officers obtained a search warrant for Street's residence to search for a 9mm weapon. No weapon was recovered, but, during the course of the search, officers discovered and seized a number of posed photographs of individuals, including Street, displaying signs or signals associated with membership in an informal association commonly known as a "gang." They also seized a notebook containing a list of members of the gang and other information that was referred to as a "gang bible." The notebook contained information indicating that Street occupied the position of "supreme being" in that organization.
¶ 7. The investigation also revealed evidence that White and Street had been seen in each other's company on the afternoon of the same night that White was killed. Also, officers learned that White had been involved in a prior knifing incident involving a member of Street's gang by the name of James Steele, and that White had recently returned to the community after temporarily fleeing the area in fear for his safety. This information suggested to law enforcement officers that the possible motive for the killing was retaliation for the injuries White had previously inflicted on Steele.
¶ 8. The State indicted Street for murder and produced evidence at trial tending to establish the matters that we have summarized above. The jury convicted Street and he was sentenced to life in prison. His motion for post-trial relief at the trial level was denied and this appeal followed. We consider the issues raised by Street in the same order he presented them in his brief to the Court.

II.

The First Issue: An Attack on the Sufficiency of the Evidence
¶ 9. Street claims that the State failed to meet its burden of proving his guilt of the crime of murder by the necessary standard. This was a case based entirely on circumstantial evidence; therefore, the State's burden was to prove Street guilty beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis consistent with innocence. Tubbs v. State, 402 So.2d 830, 834 (Miss. 1981).
¶ 10. Street argues that there were other equally plausible explanations of how White met his death that were consistent with Street's innocence. He points to evidence produced at trial that James Steele, the victim of White's earlier knifing attack, admitted to investigating officers that he was in town on the evening of the murder and was driving a vehicle that generally fit the description given by Dickson. Street suggests that this evidence, coupled with an inference that Steele might desire to avenge his earlier injuries, was sufficient to give rise to the hypothesis that Steele himself committed the murder. Alternatively, he points out that other witnesses for the defense testified that they were driving Street's vehicle on the night of the murder and that Street was not with them.
*501 ¶ 11. We conclude that evidence of these facts, standing alone, falls substantially short of the mark of raising a reasonable inference that Steele was instrumental in the killing or that, for some unexplained reason, Street's companions who had borrowed his car decided to abduct and execute White. Any conclusion that these other individuals were the actual assailants could only be supported by engaging in the wildest of speculation. We conclude that, on this scanty evidentiary basis, merely posing the irrefutable, but unpersuasive, proposition that one or more of these other persons could have been the murderer does not give rise to an alternate hypothesis consistent with innocence as that concept has been established in this State's jurisprudence regarding circumstantial evidence cases. Rather, it appears to this Court that Street's alternate theories are nothing more than the "fanciful" hypotheses or mere possibilities that have been rejected in such cases as Baker v. State, 317 So.2d 901, 902 (Miss.1975).
¶ 12. Alternatively, Street asserts that, disregarding evidence implicating others as the potential guilty parties, the circumstantial evidence pointing to his guilt was simply not strong enough to support a verdict of guilt. We conclude otherwise. It is within the province of the jury to draw reasonable inferences from the evidence presented. McLelland v. State, 204 So.2d 158, 164 (Miss.1967). In this case, there was evidence that Street and White had been in each other's company in the late afternoon prior to White's murder. There was strong evidence presented that Street's car was observed, in the moments immediately after White's violent death, departing the murder scene. Forensic evidence established, apparently beyond dispute, that White was killed with a 9mm weapon that only a few weeks earlier had been shown to be in Street's possession. Evidence was presented from which the jury could reasonably infer that Street, as the "supreme being" of his gang, had a motive to harm White in order to avenge the previous assault by White on one of Street's gang underlings. There was also evidence that, in the aftermath of the murder, Street attempted to disguise the appearance of his vehicle by painting it a different color, from which the jury could reasonably infer a consciousness of guilt on Street's part. We conclude that a reasonable juror, when viewing all of this evidence and drawing such reasonable inferences as would be supported by the evidence, would not necessarily be compelled to conclude that the defendant was not guilty. Patterson v. State, 724 So.2d 920 (¶ 8) (Miss.Ct.App.1998). For that reason, we find that the circumstantial evidence presented by the State was sufficient to support a guilty verdict in this case. See Manning v. State, 726 So.2d 1152 (¶ 181) (Miss.1998) overruled on other grounds.

III.

The Second Issue: Evidence of Gang Material Seized During Search of Street's Residence
¶ 13. Street complains of the trial court's refusal to suppress the documentary evidence of his gang-related activity seized during the search of his residence. He points out that the warrant permitted a search only for a 9mm weapon and did not authorize a search for evidence of his participation in a gangan activity that, of itself, is not criminal. See City of Chicago v. Morales, et al., 527 U.S. 41, 52, 119 S.Ct. 1849, 1857, 144 L.Ed.2d 67 (1999); Dawson v. Delaware, 503 U.S. 159, 163, 112 S.Ct. 1093, 117 L.Ed.2d 309 (1992). Street concedes that material not specifically listed in the search warrant may be seized if it falls into plain view of the searching officer during the course of the search. Arizona v. Hicks, 480 U.S. 321, 326, 107 S.Ct. 1149, 94 L.Ed.2d 347 (1987). However, he maintains that such unspecified material may only be seized if it (a) is, itself, contraband, or (b) readily appears to constitute evidence of criminal activity. Texas v. Brown, 460 U.S. 730, 739, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983). Street argues that, since gang membership is a *502 legal activity, there was no basis to suggest that it had any evidentiary value to implicate him in White's death.
¶ 14. What Street overlooks in that argument is testimony by an investigating officer that law enforcement officials were generally knowledgeable about White's prior knifing encounter with Steele and were aware that there was more than one individual in the vehicle that departed the murder scene in the moments after White was shot. This information, coupled with Steele's appearance in the photographs of a collection of individuals displaying gang symbols and signs together with written documents indicating Street's role as the gang's "supreme being" was enough, in our view, to suggest the possibility that White's killing may have been a gangrelated retaliation for an assault on one of its members and would certainly justify the seizure of this evidence to bolster the State's theory of the motive for the shooting.
¶ 15. Thus, since these photographs and notebook were both (a) in plain view during the course of a search for the murder weapon, and (b) could reasonably be construed as having some evidentiary value in determining the circumstances surrounding White's death, we conclude that the test of Texas v. Brown was met and that the seizure of these materials was not unreasonable and, thus, did not violate any rights extended to Street under the Fourth Amendment of the Constitution of the United States.

IV.

The Third Issue: Improper Impeachment of Defense Witness, Renee Mills
¶ 16. Renee Mills testified for the defense, indicating that a State witness may have had an emotional involvement with White that she had denied during her direct testimony. Mills also testified that White and the witness had been in her home in the company of each other on the evening White was murdered. Although the relevance of this evidence is not readily apparent, it appears that it was intended as an attack on the State's witness's credibility.
¶ 17. As a counter-attack to this apparent attack on the credibility of one of its witnesses, the State was permitted, over a defense objection, to show that Mills was married to a member of Street's gang. Street now complains on appeal that this evidence was inadmissible since the only proper way to attack a witness's credibility, according to Street, is by opinion or reputation evidence relating to the witness's character for truthfulness under Mississippi Rule of Evidence 608. Alternatively, Street argues that the evidence was inadmissible because of its failure to pass through the filter of Rule 403, since the inflammatory nature of the evidence caused its prejudicial impact to substantially outweigh any probative value it might have. This proposition is clearly without merit. A witness's credibility may be attacked by showing "evidence of bias... of the witness for ... any party to the case...." M.R.E. 616. We are satisfied that evidence that the witness was married to a member of the defendant's gang sufficiently invoked considerations of bias on the part of the witness to permit the introduction of the evidence under Rule 616. U.S. v. Abel, 469 U.S. 45, 56, 105 S.Ct. 465, 83 L.Ed.2d 450 (1984). It then became the role of the jury to assess what impact that information might have on the believability of the witness. Parenthetically, we must also observe that the evidence given by Mills, even if every word were accepted as true by the jury, was so unhelpful to the ultimate question before the jury that we could see little harm to the fundamentally fair nature of this trial even were we to conclude that this attack on her testimony was improper. There simply is no merit to this issue.

V.

The Fourth Issue: Plain Error or Ineffective Assistance of Counsel
¶ 18. Street complains concerning the State's repeated efforts to impeach defense *503 witnesses by showing their gang affiliation with Street. He also alleges error occurred when a rebuttal witness was permitted to contradict Street's testimony on a matter which Street contends was collateral. Recognizing that there were no contemporaneous objections when these matters were introduced at trial, Street advances two alternate theories as to why this Court should reverse in the face of the well-established proposition that an appellate court will normally not consider for the first time on appeal an error that was not timely presented to the trial court. Read v. State, 430 So.2d 832, 838 (Miss.1983). First, he claims that the inadmissible evidence so undermined the legitimacy of the trial process that we ought to note the matters under the plain error doctrine. See, e.g. Gray v. State, 549 So.2d 1316, 1321 (Miss.1989). Alternatively, Street suggests that the failure of his counsel to lodge a timely objection to the evidence demonstrates that the attorney's performance was so deficient as to deny him the effective assistance of counsel in a criminal prosecution that is guaranteed to him under the Sixth Amendment to the Constitution of the United States.

A.

Evidence of Gang Activity
¶ 19. For reasons that are essentially the same as those discussed under Section III of this opinion, we are satisfied that evidence indicating that Street's witnesses were affiliated with him in an organized gang was admissible for purposes of impeachment to show possible bias in favor of Street. M.R.E. 616; Abel, 469 U.S. at 56, 105 S.Ct. 465. For that reason, we determine that considerations of plain error do not arise because we can detect no error at all in the admission of this evidence.
¶ 20. Having resolved that issue, it must likewise appear that an attorney's failure to interpose a facially-fruitless objection to a proper line of inquiry by opposing counsel cannot fall into the category of ineffective assistance of counsel. It fails both prongs of the test for such matters adopted in Gilliard v. State, 462 So.2d 710, 714 (Miss.1985), in that the failure neither demonstrated that the attorney's performance was substandard, nor is there any possibility that a different result would have occurred at trial had the admission of the evidence been opposed. Id.

B.

The State's Rebuttal Witness
¶ 21. During examination by his counsel, Street volunteered that he never had any problems with law enforcement officials. He then attached a caveat mentioning possible trouble with one deputy sheriff. When asked about that incident on cross-examination by the State, Street attempted to minimize the confrontation, passing it off as an incident where he was merely "picking at" the deputy at a time when the deputy was married to his (Street's) aunt.
¶ 22. The State then called the deputy as a rebuttal witness. Without objection, he was permitted to relate an incident that had occurred between him and Street at a time before he even became a law enforcement official. The incident allegedly occurred while the witness was working on a car in a red sweat suit and was confronted by Street because red was the signature color of a gang that was considered a rival to Street's gang. According to the witness, Street angrily approached him while carrying a pistol and a struggle ensued in which the witness took possession of the firearm from Street.
¶ 23. We must begin by agreeing with Street that this evidence was, beyond any doubt, improper rebuttal. There can be no principled argument that Street opened the door to this evidence by this response to a question by his counsel:
Uh. Ever since I've known Sheriff Stanley McLeod, I've given him the utmost *504 respect. I haven't never gave him or any of his office any problem, except for maybe, uh, Carl [the deputy] over there, you know.
¶ 24. This is especially true in light of the fact that the incident subsequently related by the deputy sheriff occurred at a time when the witness was not involved in any way in law enforcement activities and could have had nothing whatever to do with Street's prior cooperationor lack of cooperationwith law enforcement officials.
¶ 25. The State, in its brief, suggests that the evidence was admissible to demonstrate the depth of Street's dedication to upholding the dignity and honor of his gang. No authority suggesting the admissibility of the evidence for such purposes is cited. Additionally, the question arises as to why, if the evidence were admissible for that purpose, it was not offered as a part of the State's case-in-chief since, under that theory, the need for Street to deny the incident would not be a necessary prerequisite to admissibility. The answer appears to be that this theory of admissibility was an after-the-fact concoction and was not the premise upon which the State offered the evidence at trial.
¶ 26. Nevertheless, we must recognize that the defense interposed no objection to the deputy's testimonya necessary prerequisite to preserving the error for appellate review. King v. State, 615 So.2d 1202, 1205 (Miss.1993). We also would observe that this Court has done a careful analysis of the evidence presented, including specifically defense counsel's cross-examination of the witness. Defense counsel did an excellent job of demonstrating the triviality of the incident and the strong possibility that the deputy had only recently "remembered" that Street was carrying a firearm during the incident. Thus, though counsel's effectiveness for failing to object to the evidence may be the subject of some question, there is little doubt that his ability to effectively neutralize any damaging effect of the evidence through a vigorous cross-examination was above criticism.
¶ 27. On that basis we conclude that it would be inappropriate to note the impropriety of the State's efforts on principles of either plain error or ineffective assistance of counsel. There simply is no reasonable basis to conclude that this unwarranted deviation from a pursuit of the critical issue before the court was so damaging to Street's cause as to deny him a fundamentally fair trial. Nor, for purposes of considering the effectiveness of Street's counsel, do we think there is an arguable basis to suppose that there was any likelihood that a different result would have been obtained had defense counsel successfully resisted the introduction of the evidence rather than effectively destroying its impact through vigorous cross-examination.
¶ 28. Nothing in this result ought to be read, however, as sanctioning this sort of effort by the State to introduce evidence of other alleged misconduct by a defendant unrelated to the crime on the slightest pretext that the defendant, by some remark, has "opened the door" to such evidence. A criminal trial should be a disciplined and focused inquiry into the singular issue of the guilt of the defendant of the specific crime charged in the indictment and nothing more. The interjection of such "sideshow" incidents into the trial, without legitimate basis, always raises the possibility of, at best, an unnecessary and costly waste of limited judicial resources in retrying the case, or, at worst, the needless failure altogether to obtain punishment of a criminal for his undoubted misdeeds.

VI.

The Fifth Issue: Failure to Grant a Mistrial Due to Prejudicial Information Elicited During Voir Dire
¶ 29. During voir dire, several potential jurors mentioned that they had a previous acquaintanceship with Street based on the fact that they were employees of a local State-run prison facility where Street had previously been incarcerated. *505 Street moved for a mistrial based on the notion that these statements put before the jury the fact that he was a convicted felona matter that cast him in a bad light in the minds of all potential jurors to such an extent that they would, thereafter, be unable to objectively view the evidence and determine his guilt untouched by considerations of his prior criminal activity.
¶ 30. While it is true that evidence of a defendant's prior criminal history is not generally a proper subject for jury consideration in determining the issue of guilt as to a specific charge, there is no hard and fast rule that, once a juror learns that the defendant is a convicted felon, that juror is thereafter disqualified from service. In this case, the evidence was not purposely put before the jury by the State in an attempt to prejudice the defendant in the eyes of the jury panel. At the conclusion of the voir dire, the trial court made the following inquiry of the panel:
Let me ask you one question. Several of the members of the jury have given responses to these questions and you all have heard those responses. Have any of the responses of any of the potential jurors caused any of you to have the slightest bias or prejudice against the defendant in this case? Have any of the because of the answers given by any of the members of the jury panels, is there any of you that now would have the slightest bias or prejudice toward this defendant, in any way?
¶ 31. No juror responded to the inquiry indicating that the previous responses indicating that Street had been previously incarcerated would adversely affect that juror's ability to dispassionately assess the evidence. When defense counsel moved to quash the venire, the court reflected on his inquiry and the lack of response and decided that this information "would not be a factor in the decision in this case." He, therefore, denied the motion.
¶ 32. Such matters are entrusted, in the first instance, to the sound discretion of the trial court. Evans v. State, 725 So.2d 613 (¶ 116)(Miss.1997). That court, viewing events as they unfold, is best situated to assess the impact that such occurrences have on the jury and is best able to judge the sincerity with which the potential jurors attest to their ability to disregard such matters. Wells v. State, 698 So.2d 497, 501 (Miss.1997). Our ability to intercede, once such a decision has been made, is limited. Only if we are satisfied that the trial court has abused its discretion in assessing the damaging impact of the improper information are we permitted to alter the trial court's decision. Id.
¶ 33. The trial court excused for cause all those jurors who indicated that they worked at the prison facility. In view of that action and the effort by the trial court to ensure that other jurors were not actually prejudiced by learning of Street's prior incarceration, we can find nothing to convince us that these passing remarks by several venire members setting out the basis for their acquaintanceship with Street were so prejudicial that it would have been impossible to assemble a fair and impartial jury from the remaining venire members, each of whom had affirmed his or her impartiality and lack of bias or prejudice.
¶ 34. Therefore, we conclude that the trial court's refusal to quash the entire venire was not reversible error.
¶ 35. THE JUDGMENT OF THE CIRCUIT COURT OF GREENE COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE WITHOUT BENEFIT OF PAROLE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO GREENE COUNTY.
SOUTHWICK, P.J., BRIDGES, DIAZ, IRVING, LEE, MOORE, PAYNE, AND THOMAS, JJ., CONCUR. KING, P.J., CONCURS IN RESULT ONLY.