768 So.2d 331 (2000)
Jerry LOCKRIDGE a/k/a Jerry W. Lockridge a/k/a Jerry Wayne Lockridge, Appellant,
v.
STATE of Mississippi, Appellee.
No. 1999-KA-00564-COA.
Court of Appeals of Mississippi.
October 3, 2000.
*334 John David Weddle, Tupelo, Angela Newsom Snyder, Attorneys for Appellant.
Office of the Attorney General by Jean Smith Vaughan, Attorney for Appellee.
BEFORE McMILLIN, C.J., IRVING, AND MOORE, JJ.
MOORE, J., for the Court:
¶ 1. On February 22, 1999, in the Circuit Court of Lee County, Mississippi, Jerry Lockridge was tried upon a multiple count indictment and convicted of burglary, aggravated assault with a deadly weapon, and three separate counts of kidnaping. For the kidnaping counts, Lockridge was sentenced to three thirty year terms to run concurrently with each other. For the aggravated assault count he was sentenced to a term of twenty years with ten years suspended to run consecutively with the three terms for kidnaping. For the burglary count he was sentenced to a term of seven years to run concurrently to the aggravated assault count but consecutively to the kidnaping counts. He appeals asserting
I. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL;
II. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO APPOINT ADDITIONAL COUNSEL;
III. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISQUALIFY THE JURY VENIRE BECAUSE OF THE STATEMENT MADE BY ONE OF THE JURORS THAT THE DEFENDANT HAD BEEN LOCKED UP;
IV. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO CONTINUE AND/OR OBJECTING TO THE JURY VENIRE CONTAINING ONLY THIRTY-NINE PROSPECTIVE JURORS;
V. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE;
VI. WHETHER THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO GRANT A MISTRIAL AFTER A WITNESS IDENTIFIED THE DEFENDANT IN VIDEOTAPE AND STILL PHOTOGRAPHS;
VII. WHETHER THE TRIAL COURT ERRED IN NOT ADMONISHING *335 PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT; AND
VIII. WHETHER THE TRIAL COURT ERRED IN REFUSING THE DEFENDANT'S PROPOSED JURY INSTRUCTION D-7?

STATEMENT OF THE CASE
¶ 2. This case is before this Court for the second time. Originally, Lockridge was tried by the Circuit Court of Lee County on August 24, 1995. While the trial court had appointed counsel, Lockridge elected to represent himself and was convicted. This Court reversed and remanded finding that the trial court failed to advise Lockridge of the consequences of representing himself at trial. Lockridge v. State, 704 So.2d 466 (Miss.Ct.App.1997) (unpublished opinion). Upon remand the trial court appointed another attorney as counsel, John Weddle, who represented Lockridge at trial. This case is now again before us on the above mentioned assertions of error.

FACTS
¶ 3. On July 20, 1992, a man entered a shopping mall during the early morning hours before it opened to the public. The man concealed his face with a nylon stocking. He encountered Herman Dunaway who worked on the mall's cleaning crew. Dunaway recognized the man as a former co-worker on the cleaning crew and identified the man as Lockridge. Dunaway testified that Lockridge tied his hands and legs with wire, locked him in a closet, verbally threatened him with death and struck him in the head with a pistol barrel. The intruder whom Dunaway identified as Lockridge next encountered Victor Stalnaker, who worked as a security guard, and Harry Thomason, who worked on the cleaning crew. The intruder threatened and tied-up both men. Thomason identified Lockridge as the intruder, but he passed away prior to testifying at the second trial. His testimony, however, was preserved and read to the jury. The intruder then stole various items from the mall. Security cameras video taped the intruder as the burglary took place.

DISCUSSION

I. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO PROVIDE A SPEEDY TRIAL?
¶ 4. Mississippi's speedy trial statute, Miss.Code Ann. § 99-17-1 (Rev.1994), does not apply in retrials. Mitchell v. State, 572 So.2d 865, 870 (Miss.1990); Kinzey v. State, 498 So.2d 814 (Miss.1986); Carlisle v. State, 393 So.2d 1312, 1314 (Miss.1981). Upon retrial the question "becomes a matter of discretion with the trial court to be measured by the constitutional standards of reasonableness and fairness under the constitutional right to a speedy trial as enunciated in Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972)." Carlisle, 393 So.2d at 1314.[1] The Barker Court identified four factors which are to be considered in making such a determination: (1) the length of the delay; (2) the reason for the delay; (3) whether the defendant has asserted his right to a speedy trial; and (4) whether the defendant has been prejudiced by the delay. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. 2182. No one factor is dispositive; rather, they must be considered together on a case by case basis. Barker v. Wingo, 407 U.S. at 533, 92 S.Ct. 2182.
¶ 5. Concerning the length of the delay, the Barker Court stated, "[t]he length of delay is to some extent a triggering mechanism. Until there is some delay which is presumptively prejudicial, there is no necessity *336 for inquiry into the other factors that go into the balance." Barker, 407 U.S. at 530, 92 S.Ct. 2182. Our supreme court has held that an eight month delay is presumptively prejudicial. Smith v. State, 550 So.2d 406, 408 (Miss.1989). In this case, there is no question that the length of time between the mandate remanding for a new trial and the new trial being convened was long enough to require an analysis of the other factors identified by the Barker Court.
¶ 6. Concerning the reason for the delay, the trial court conducted a hearing on Lockridge's motion to dismiss which was based on the speedy trial issue. During the hearing the trial court noted that the case had been set for trial in every court sitting since the remand on October 23, 1997. At that time Lockridge was free on an appeal bond, and while he remained in the Tupelo, Mississippi area his exact residence was uncertain. In fact, his present attorney was appointed sometime in January or early February of 1998, and he filed a motion for a continuance on February 8, 1998 based upon not being ready for trial. Trial was again set to commence on July 14, 1998 at which time Lockridge failed to appear, and an alias capias was issued. Finally, on November 6, 1998 Lockridge and his attorney met for the first time at the courthouse in Tupelo, Mississippi at which time Lockridge was taken into custody, and he remained in custody until trial. Lockridge asserts that despite these facts the reason for the delay should not be attributed to him because he did not know who his attorney was or that the case had been set for trial. Lockridge may very well have been ill informed of the status of his case as he made little or no effort to ascertain the status for himself. The trial judge summed up his findings on the issue by stating, "As is the circumstance in 999 out of 1,000 cases, the defendant is quite happy to have the case languish on the docket and hopefully disappear down the abysmal rat hole of time." Nothing in the record discloses the trial court erred in this summation that Lockridge's own inaction was at least partially the cause for the delay.
¶ 7. Concerning whether Lockridge asserted his right to a speedy trial, the only action that Lockridge took during the time between when the mandate in the appeal from his first trial issued and when his second trial commenced was to renew a motion for a speedy trial that was filed before the first trial. As previously discussed, upon retrial the time frame at issue is only that occurring after the mandate ordering retrial. Lockridge made no further assertion of right until the hearing on pre-trial motions on February 9, 1999. Trial commenced on February 22, 1999. The trial court did not err in finding Lockridge failed to assert his right to a speedy trial.
¶ 8. Concerning prejudice to the defendant, our supreme court found the factor is designed to limit a defendant's pretrial detention, his anxiety over charges, and the possibility of impairment of his defense. In this case, Lockridge was free on an appeal bond and was only incarcerated after he failed to appear for trial. While he undoubtedly had anxiety over the serious charges, his inattention to them was in no small part the reason for delay. Further, he asserts no prejudice to his case arising from difficulty in locating witnesses or failed recollections. The State actually suffered prejudice from the passage of time in that Thomason passed away prior to the second trial, and while the State preserved the testimony it could not produce a live witness to testify about his kidnaping.
¶ 9. Balancing all the Barker Court factors, no one factor tips towards Lockridge. Lockridge had no interest in his case coming to trial. He took no action to remain informed of the status of his case. He remained free on bond and absent from trial until he was taken into custody. These facts do not show his right to a *337 speedy trial was violated, and this issue has no merit.

II. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO APPOINT ADDITIONAL COUNSEL?
¶ 10. Lockridge asserts that "due to the extensive investigation and time demanded by this case, the public defender should have been appointed additional counsel for assistance...." However, he fails to specify what extensive investigation was required. The case had already been tried once, and counsel had a transcript available. Counsel was granted at least one continuance to prepare for trial. The defense only called five witnesses, one of whom was Lockridge. The only facts in the record that shed light on why additional counsel was sought was Lockridge's statement to the trial court during the hearing on pre-trial motions, "I would like to be appointed another attorney, you know, that will come and talk to me a lot sooner so we can get prepared for trial." Lockridge's statement aside, prior to this hearing his appointed counsel had previously met with him, and Lockridge failed to provide the names of persons he wished to call as witnesses. His counsel had not failed to prepare and had in fact completed discovery and reviewed the transcript of the first trial. The real reason for uncertainty concerning his representation of Lockridge was that at the time of the pretrial hearing Lockridge was still considering whether he would choose to represent himself in this second trial as he had done in the first. While a defendant has a right to counsel or even a right to choose to proceed pro se, this right cannot be used as "a ruse or stratagem." Evans v. State, 273 So.2d 495, 499 (Miss.1973). In complex cases where a defendant seeks to partially represent himself but also rely upon an attorney in some instances, our supreme court has discussed the roles of counsel and the use of multiple counsel. Dunn v. State, 693 So.2d 1333, 1341 (Miss. 1997); Metcalf v. State, 629 So.2d 558, 563 (Miss.1993). This case, however, did not present such a complex issue of representation. Lockridge fails to assert any facts or legal analysis showing the trial court erred in not appointing additional counsel. This issue is without merit.

III. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO DISQUALIFY THE JURY VENIRE BECAUSE OF THE STATEMENT MADE BY ONE OF THE JURORS THAT THE DEFENDANT HAD BEEN LOCKED UP
¶ 11. During voir dire, the trial court asked one of the members of the jury venire, Harry Grayson, Jr., whether he was related to Lockridge and whether he had spoken with Lockridge that morning. Grayson responded that he was a cousin of Lockridge and "I went in there to see him this morning. I hadn't seen him since he's been locked up." Lockridge moved for a continuance until a different jury venire could be assembled. On appeal he argues that the trial court should have found that Grayson's comment mandated a mistrial.
¶ 12. The standard of review applied to decisions of whether to grant a mistrial based upon the voir dire statements of potential jurors is abuse of discretion. Street v. State, 754 So.2d 497 (¶ ) (Miss.Ct.App.1999) (citing Evans v. State, 725 So.2d 613, 651 (Miss.1997)). Further, even where a potential juror learns a defendant has been convicted of a previous crime, this Court has found there "is no hard and fast rule" that the juror should be disqualified. Street v. State, 754 So.2d 497 (¶ ) (Miss.Ct.App.1999) (citing Doby v. State, 557 So.2d 533, 537 (Miss.1990)). In this case, all that was communicated to the jury venire was that Lockridge was in jail while awaiting trial. As the State argued in the bench conference held upon Lockridge's motion, potential jurors should know that people are sometimes jailed before trial. Moreover, the trial court *338 viewed the effect this comment had upon the jurors and found no prejudice. Based upon this record, we find the trial court did not abuse its discretion in denying a motion for a mistrial.
¶ 13. Lockridge further contends that the trial court erred in not giving a limiting instruction that his incarceration was not indicative of his guilt or innocence. However, Lockridge failed to specifically request such an instruction. An appellate court will not find a trial court erred in failing to give a limiting instruction that was not requested. Snider v. State, 755 So.2d 507 (¶ ) (Miss.Ct.App.1999) (citing Holland v. State, 705 So.2d 307, 342 (Miss. 1997)). Thus, the issue was waived. Moreover, the trial court instructed the jury to base its opinion as to guilt or innocence solely from the evidence introduced. Juries are presumed to follow their instructions. McGilberry v. State, 741 So.2d 894 (¶ ) (Miss.1999). Therefore, to any extent the issue was not waived, it is without merit.

IV. WHETHER THE TRIAL COURT ERRED IN OVERRULING THE DEFENDANT'S MOTION TO CONTINUE AND/OR OBJECTING TO THE JURY VENIRE CONTAINING ONLY THIRTY-NINE PROSPECTIVE JURORS?
¶ 14. Lockridge asserts that he was not afforded his constitutional right to an impartial jury as secured by our state constitution, MISS. CONST. of 1890, art 3, § 26. Lockridge bases this assertion solely upon Mhoon v. State, 464 So.2d 77 (Miss.1985). The decision in Mhoon turned uniquely upon its facts in that out of a venire comprised of thirty-nine individuals, twelve were either policeman or related to current or former police officers, and after jury selection in which Mhoon exhausted his peremptory challenges, five of the twelve jurors were related to policemen, and additionally the foreman was a police officer in uniform. Mhoon, 464 So.2d at 80. While the Mhoon court reversed and remanded for a new trial, it expressly declined to set down a firm rule or standard of whether or how many persons related to law enforcement personnel could be seated in a jury.
This court does not hold that a person engaged in law enforcement, or related by blood or marriage to one engaged in law enforcement, should be per se excluded from jury service. However, in a unique factual situation such as this unusual case, the opportunity for undue influence over the opinions of other jurors was too great a risk.
Mhoon, 464 So.2d at 82.
¶ 15. In this case, Lockridge asserts that the venire was too small and contained too many individuals related to police or sheriff personnel for him to obtain an impartial jury. However, Lockridge failed to exhaust all of his peremptory challenges. The record is clear that the twelve jurors were selected after going through thirty-three individuals, and had Lockridge chosen to use his remaining peremptory challenges there were still nine individuals left to tender. Lockridge concedes he made a strategic decision not to exhaust his peremptory challenges because one or more of those remaining individuals were people he did not want seated on the jury.
¶ 16. A person does not have a right to exclude persons with connection to law enforcement personnel; rather, in the ordinary scope of things it is quite ordinary to have people with connections to law enforcement in the jury pool. Shell v. State, 554 So.2d 887, 891 (Miss.1989) (rev'd on other grounds Shell v. Mississippi, 498 U.S. 1, 111 S.Ct. 313, 112 L.Ed.2d 1 (1990)). See also Jones v. State, 754 So.2d 476 (¶) (Miss.Ct.App.1999). Moreover, in this case it appears that none of the persons who stated during voir dire that they had some relation to persons in law enforcement were actually seated upon the jury. The question for appellate review is whether the record discloses that the jury was, or at least was likely to be partial to *339 the prosecution. Mhoon, 464 So.2d at 82. Nothing in this case indicates any suggestion that any such impartiality was present. There is no merit to this assertion of error.

V. WHETHER THE VERDICT OF THE JURY WAS AGAINST THE OVERWHELMING WEIGHT OF THE EVIDENCE?
¶ 17. Lockridge asserts that the verdict was against the weight of the evidence and that the trial court erred in denying his motion for a new trial. A motion for new trial deals with the weight of the evidence; our standard of review regarding a motion for new trial is stated in McClain v. State, 625 So.2d 774 (Miss. 1993):
Matters regarding the weight and credibility of the evidence are to be resolved by the jury....
Moreover, the challenge to the weight of the evidence via motion for a new trial implicates the trial court's sound discretion. Procedurally such challenge necessarily invokes [Uniform Circuit and County Court Rule 10.05]. New trial decisions rest in the sound discretion of the trial court, and the motion should not be granted except to prevent an unconscionable injustice. We reverse only for abuse of discretion....
McClain, 625 So.2d at 778-81 (citations omitted).
¶ 18. In this case, Lockridge was positively identified by one of the victims. A second witness, Harry Thomason, died before the second trial, but the jury heard Harry Thomason's previous testimony in which he identified Lockridge as the kidnapper. These men as well as the third victim, Victor Stalnaker, testified that the person who assaulted them knew facts about the mall and themselves that only a person who was acquainted with mall and themselves could know. Lastly, the jury viewed video tapes showing a man who could have been Lockridge committing the crimes. Based upon this evidence, the trial court did not err in denying Lockridge's motion for a new trial.

VI. WHETHER THE TRIAL COURT ERRED IN OVERRULING DEFENDANT'S MOTION TO GRANT A MISTRIAL AFTER A WITNESS IDENTIFIED THE DEFENDANT IN VIDEOTAPE AND STILL PHOTOGRAPHS?
¶ 19. Sammy Green testified he had been an investigator with the Tupelo Police Department and had investigated the mall burglary. As part of his investigation he viewed the video tapes and still photographs showing the robbery and kidnaping of Thomason. During his testimony he was asked if he could identify the man shown on the video tape and photographs burglarizing the mall, and he identified Lockridge. The defense objected, "we would either ask for a mistrial, because the jury's already heard it, or we would ask that the jury be instructed in the alternative." The basis of the objection was that Green's testimony was hearsay both because he had previously viewed the video tape and photographs with Dunaway and Thomason during which they identified Lockridge and because Green was not an eyewitness and therefore not competent to offer an opinion on the ultimate fact of identification. The objection was sustained, and the trial court admonished the jury to disregard Green's identification of Lockridge.
¶ 20. When an objection is sustained and a jury is admonished to disregard, an appellate court will not often overturn a trial court's discretionary decision to deny a motion for a mistrial. Hoops v. State, 681 So.2d 521, 528 (Miss. 1996); Wright v. State, 540 So.2d 1, 4 (Miss.1989); Marks v. State, 532 So.2d 976, 982 (Miss.1988). Further, there is a presumption that juries follow cautionary instructions. Estes v. State, 533 So.2d 437, 439 (Miss.1988); Davis v. State, 472 So.2d 428, 433 (Miss.1985). In this case the trial *340 court correctly sustained the objection and admonished the jury. Nothing indicates the trial court abused its discretion. This issue is without merit.

VII. WHETHER THE TRIAL COURT ERRED IN NOT ADMONISHING PROSECUTORIAL MISCONDUCT DURING CLOSING ARGUMENT?
¶ 21. The issue that this assignment of error goes to is that of Lockridge's identity as the intruder. The video tape showed and Dunaway testified that the intruder did not wear glasses. First, Lockridge called an optometrist, Dr. Bill Dickerson, who testified to his need for eyeglasses. The State cross-examined Dickerson, and under cross-examination Dickerson stated that it was possible that Lockridge could have committed the crimes without his glasses, but he would have had difficulty doing so. Second, Lockridge testified that his eyesight was so impaired that he could not have committed the crimes without wearing his eyeglasses. During his testimony, Lockridge physically showed that he had difficulty walking and not bumping into things unless he wore his glasses.
¶ 22. In closing arguments, the State characterized Lockridge's testimony as "[t]he performance of the nearsighted Mr. MaGoo who left the stand." The State further commented upon Lockridge's need for glasses by stating "the defendant left the stand, I'll submit to you, feigning a degree of unsightedness that I have not observed in his peregrinations throughout the hall." The defense objected to both statements, and the trial court sustained them because they were "bringing matters before the jury that were not in evidence."
¶ 23. Lockridge asserts that this argument was prejudicial and akin to commenting upon his decision not to testify. As he did in fact testify, the State's comments were in no way an attempt to comment upon the failure to testify. Moreover, even in cases where the State's argument could be seen comments on the failure to testify, our Supreme Court has found no error if the argument is also a comment upon the evidence or lack thereof. Shook v. State, 552 So.2d 841, 851 (Miss.1989); Jimpson v. State, 532 So.2d 985, 991 (Miss.1988). However, while the State is afforded wide latitude in closing argument, it may not seek to vilify or personally attack the defendant. Turner v. State, 721 So.2d 642 (¶) (Miss.1988); Burney v. State, 515 So.2d 1154, 1156 (Miss.1987); Johnson v. State, 477 So.2d 196, 209-10 (Miss.1985). Lockridge made an objection that was sustained. He did not request that the jury be cautioned to disregard, nor did he contemporaneously move for a mistrial, Our supreme court has found that the failure to ask for a cautionary instruction and move for a mistrial at the time of the improper argument waives this issue. Burney, 515 So.2d at 1156; Johnson, 477 So.2d at 209-10. Nothing in the record indicates any prejudice to Lockridge that may have arisen from the State's improper argument that could not have been cured with a cautionary instruction had one been requested. Accordingly, this issue was waived, and even had it not have been it would be without merit.

VIII. WHETHER THE TRIAL COURT ERRED IN REFUSING THE DEFENDANT'S PROPOSED JURY INSTRUCTION D-7?
¶ 24. The subject of this assertion of error is an identification instruction proposed by Lockridge. The trial court refused the instruction stating, "[i]t's redundant to two of the Court's instructions and to one of the Defendant's, at least one of the Defendants instructions." Our supreme court has stated many times that an instruction need not be given if another instruction, or the other instructions taken as a whole, correctly state the principle of law at issue. Clemons v. State, 535 So.2d 1354, 1360 (Miss.1988)(rev'd on other grounds) Clemons v. Mississippi, 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 *341 (1990); Calhoun v. State, 526 So.2d 531, 533 (Miss.1988); Laney v. State, 486 So.2d 1242, 1246 (Miss.1986).
¶ 25. The refused instruction required the jury to consider three separate elements in judging the identification of Lockridge as the intruder: 1) the witness had the capacity and opportunity to observe and describe the intruder, 2) the identification was a product of the witnesses own recollection, and 3) the witness's credibility. Instruction D-6 was given, and it instructed the jury to review the identification of Lockridge considering "the witness's capacity for memory and observation, his or her familiarity with the defendant, any bias or prejudice that he or she may have toward the defendant, and any other matters in evidence in this case which you may deem worthy of consideration." Similarly, Instruction D-8 was given, and it also instructed the jury to determine the credibility of all witnesses. These two instructions, taken along with the trial court's instructions that the jury was to judge the witnesses' credibility and base its judgment solely upon the evidence, adequately instructed the jury on the issue of identification. The denied instruction was redundant, and there was no error in refusing it.
¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF LEE COUNTY OF CONVICTION OF COUNT I-BURGLARY AND LARCENY: SENTENCE TO (7) YEARS TO RUN CONSECUTIVE WITH COUNT IV, V & VI; COUNT III-AGGRAVATED ASSAULT: SENTENCE TO (20) YEARS (10) YEARS OF SENTENCE ON COUNT III SHALL BE SUSPENDED UPON CONDITION HE COMMIT NO OFFENSE AGAINST THE LAWS OF THIS STATE; TO RUN CONCURRENTLY WITH SENTENCE IN COUNT I AND CONSECUTIVELY WITH SENTENCES IN COUNTS IV, V, AND VI; COUNT IV-KIDNAPING: SENTENCED TO SERVE (30) YEARS; COUNT V-KIDNAPING: SENTENCED TO SERVE (30) YEARS; COUNT VI-KIDNAPING: SENTENCED TO SERVE (30) YEARS, SENTENCES ON COUNT IV, V & VI SHALL RUN CONCURRENTLY WITH EACH OTHER, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, IS AFFIRMED. LEE COUNTY IS ASSESSED ALL COSTS OF THIS APPEAL.
McMILLIN, C.J., KING AND SOUTHWICK, P.JJ., BRIDGES, IRVING, LEE, MYERS, PAYNE, AND THOMAS, JJ., CONCUR.
NOTES
[1] The constitutional right to a speedy trial is secured by the Sixth and Fourteenth Amendments to the United States Constitution, as well as Article 3, Section 26 of the Mississippi Constitution of 1890.