863 So.2d 1056 (2004)
Irvin FORREST, Appellant
v.
STATE of Mississippi, Appellee.
No. 2002-KA-00206-COA.
Court of Appeals of Mississippi.
January 20, 2004.
*1059 William E. Phillips, David M. Ratcliff, Laurel, attorneys for appellant.
Office of the Attorney General by Jean Smith Vaughan, attorney for appellee.
EN BANC.

MODIFIED OPINION ON MOTION FOR REHEARING
KING, P.J., for the Court.
¶ 1. This cause has returned to this Court upon the State's motion for rehearing. That motion is denied, the prior opinion withdrawn and this modified opinion substituted in its stead.
¶ 2. Irvin Forrest was convicted in the Circuit Court of Jones County of two counts of rape and one count of auto theft. He appeals, asserting that the circuit court erred in: (1) denying his motion to suppress DNA evidence obtained in violation of his rights under the Fifth, Sixth and Fourteenth Amendments to the United States Constitution, (2) denying his motion for funds for an expert witness to interpret DNA testing, (3) denying his motion to dismiss for failure to provide a speedy trial, (4) denying his motion to declare a mistrial after a witness mentioned the word "rape" despite a pre-trial order prohibiting the use of the word, (5) refusing to declare a mistrial after witnesses stated that he was charged with kidnapping while no such charge was brought, (6) allowing testimony of his attempt to flee when taken into custody, and (7) restricting full cross-examination of the state's DNA expert witness.
¶ 3. We find that while the Jones County Sheriff's Department should have obtained a search warrant prior to collecting a DNA sample from Forrest, under the unique facts of this case the failure does not require reversal and suppression of the evidence. All other assignments of error are without merit. Therefore, we affirm the conviction and sentence.

FACTS
¶ 4. On April 24, 2000, at approximately 1:00 a.m., a man with a handgun accosted H.C. and N.S. in the parking lot of the Hattiesburg restaurant where they worked. The man forced H.C. to drive him and N.S. to a secluded area near the Laurel-Hattiesburg airport, where he raped both of them. He stole H.C.'s vehicle and left them. The two women walked to the airport where they summoned assistance. They gave a description of their *1060 attacker as an African American male in his mid-twenties, with frizzy hair pulled back, a stubble of a beard, and wearing black jeans and a dark shirt. This information was sent out on the National Crime Information Center's computer. The Laurel Police located the vehicle, parked and unoccupied, inside the Laurel, Mississippi city limits. Jones County Sheriff's Investigator Wayne Black responded to the location, and saw a motel room key on the driver's seat. The car was towed, and Black retrieved the key. Officer Black determined that the key belonged to the El Patio Motel in Laurel.
¶ 5. Black and a deputy went to the motel, entered the motel room and ascertained that no one was inside, then left the room and placed it under surveillance. Later that day, Black observed Forrest enter the motel room. Officer Black placed Forrest in custody and transported him to the Jones County Sheriff's jail. A search of the motel room yielded a pair of black jeans and a nine millimeter pistol.
¶ 6. The next day, April 25, 2000, H.C. and N.S. came to the jail, and from separate line-ups identified Forrest. Black testified that after the line-ups, he and Detective Rusty Keyes, of the Hattiesburg Police Department, gave Miranda warnings to Forrest, and attempted to question him. However, Forrest refused to waive his rights and refused to answer questions without the presence of an attorney. Black testified that Forrest was then "isolated" and denied any opportunity to contact a lawyer, until the following day when he was initially brought before a magistrate.
¶ 7. Black testified that following Forrest's invocation of his right to counsel and his refusal to answer questions, but before his initial appearance and the appointment of counsel, Black again initiated questioning by asking Forrest to consent to a bodily search to procure pubic hairs for DNA testing. Black testified that he did not advise Forrest of the right to refuse to provide the samples. Black and Janet Booth, a nurse, testified that Forrest consented to the bodily search and seizure. The State's DNA expert, Amrita Lal, testified that Forrest's DNA matched DNA samples taken from the rape kit provided by N.S.

DISCUSSION

1. MOTION TO SUPPRESS
¶ 8. Forrest contends that the collection of his DNA samples was an illegal search and seizure, and that the circuit court erred in denying his pretrial motion to suppress DNA evidence. The written motion was premised upon the Fifth, Sixth and Fourteenth Amendments to the United States Constitution. However, in arguing the motion before the circuit court, Forrest also made clear that the substance of his argument went to his right to be free from unreasonable search and seizure under the Fourth Amendment to the United States Constitution, as well as Article 3, Section 23 of the Mississippi Constitution.
¶ 9. Warrantless searches are illegal, even when supported by probable cause, unless the search is conducted pursuant to one of the exceptions to the warrant requirement. Katz v. United States, 389 U.S. 347, 357, 88 S.Ct. 507, 19 L.Ed.2d 576, (1967) (citation omitted) (quoting Wong Sun v. United States, 371 U.S. 471, 481-482, 83 S.Ct. 407, 9 L.Ed.2d 441, (1963)). "Searches conducted without warrants have been held unlawful `notwithstanding facts unquestionably showing probable cause', for the constitution requires `that the deliberate, impartial judgment of a judicial officer ... be interposed between the citizen and the police.'" Id. The question in this case is whether Forrest's *1061 consent to the collection of DNA evidence was obtained consistent with his rights under the Fourth Amendment to the United States Constitution.
¶ 10. A valid search may be conducted without a warrant, where the defendant gives his consent Watts v. State, 828 So.2d 835 (¶ ¶ 27-28) (Miss.Ct.App. 2002). Whether a valid consent to a search has been given must be determined by an examination of the totality of the circumstances. Jackson v. State, 418 So.2d 827, 830 (Miss.1982). While one of the factors to be considered in making that determination is whether the defendant was aware that he could refuse to give his consent, it is not the controlling factor, Logan v. State, 773 So.2d 338 (¶ ¶ 12, 14)(Miss.2000), since "consent may be established without a showing that the police warned the consenting party of his Fourth Amendment rights or that he was otherwise aware of those rights." Jones v. State ex rel. Miss. Dept. of Public Safety, 607 So.2d 23, 27 (Miss.1991).
¶ 11. The record establishes that Forrest had previously been given that warning commonly referred to as the Miranda rights. At that time Forrest declined to waive those rights, and indicated his desire to speak with an attorney.
¶ 12. Subsequent to this refusal, Forrest was approached by Black and asked to give hair samples. The testimony is that Forrest indicated his consent and cooperated in the collection of the hair samples. Based upon this evidence, the trial judge found Forrest's consent to be sufficiently voluntary to make the search lawful. This is an issue, which is committed to the broad discretion of the trial court. Logan, 773 So.2d 338 at (¶ 13). Unless that discretion is abused, this Court is obligated to affirm that decision. Id. Given the record before this Court, we cannot say that the trial court's determination that Forrest's consent was voluntary was an abuse of discretion.
¶ 13. Forrest asserts that after he invoked his right to counsel and declined questioning, Black re-initiated questioning to obtain consent to collect the DNA evidence, without again advising him that he could refuse to cooperate, and his consent was thereby obtained through a violation of his rights under the Fifth Amendment to the United States Constitution.
¶ 14. Forrest's assertion that Black's re-initiating questioning was improper is clearly meritorious.
[W]hen an accused has invoked his right to have counsel present during custodial interrogation, a valid waiver of that right cannot be established by showing only that he responded to further police-initiated custodial interrogation even if he has been advised of his rights. We further hold that an accused, such as Edwards, having expressed his desire to deal with the police only through counsel, is not subject to further interrogation by the authorities until counsel has been made available to him, unless the accused himself initiates further communication, exchanges, or conversations with the police.
Edwards v. Arizona, 451 U.S. 477, 484-85, 101 S.Ct. 1880, 68 L.Ed.2d 378, (1981) (footnote omitted). See also Beckum v. State, 786 So.2d 1060(¶ 7) (Miss.2001). We hold that Black's contact with Forrest was improper. However, the seizure of evidence that is of a scientific nature, and that is not of a communicative nature, is not protected by the right against self-incrimination guaranteed by the Fifth Amendment to the United States Constitution. See, e.g., Schmerber v. California, 384 U.S. 757, 765-770, 86 S.Ct. 1826, 16 L.Ed.2d 908, (1966); Baylor v. State, 246 So.2d 516, 518 (Miss.1971). Because the *1062 evidence obtained is not protected by the Fifth Amendment, Black's improper contact does not render involuntary Forrest's consent to collect the hair samples.
¶ 15. This Court, like the trial court, must express its concern at the admission by the sheriff's department, that detainees, who requested an attorney, were routinely jailed and no effort made to promptly obtain counsel for them.

2. INDEPENDENT EXPERT WITNESS
¶ 16. Forrest asserts the circuit court erred in denying his motion for funds with which to hire an independent expert to analyze the DNA evidence. An appellate court applies an abuse of discretion standard to a trial court's denial of expert assistance, focusing on whether "the defendant was denied due process whereby the trial was fundamentally unfair." Richardson v. State, 767 So.2d 195 (¶ 7) (Miss.2000).
¶ 17. In this case, Forrest obtained results from the DNA analysis which the State intended to introduce at trial on October 25, 2001. Trial was set for December 4, 2001. Forrest filed a motion for funds to hire an independent expert on November 27, 2001, and the motion was heard two days later. During the hearing, the circuit court asked whether Forrest was seeking independent testing, and his counsel replied, "no sir.... I've got a report with a bunch of stuff on it. I might can guess what it says, but it doesn't say in plain English language." Additionally, Forrest's counsel had not contacted, and could not identify, any expert he wished to use. The report itself was eight pages long. The pertinent part was eighteen "conclusions" as to genetic comparisons of whether Forrest's DNA matched DNA material found both in vaginal swabs provided by the victims as well as on cuttings of material from the victim's undergarments. The conclusions did not reference scientific terms, but stated that the DNA found in the vaginal swabs and on the clothing of N.S. were consistent with Forrest's to the exclusion of 1 person in 10 billion, and that no seminal fluid or sperm cells were recovered from the vaginal swab and clothing of H.C.
¶ 18. Given these facts, the circuit court's denial of Forrest's motion for defense expert was not an abuse of discretion. There is no merit to this assignment of error.

3. SPEEDY TRIAL
¶ 19. Forrest raises a constitutional speedy trial issue under the Sixth Amendment to the United States Constitution and Article 3, Section 26 of the Mississippi Constitution. Forrest was held in jail for 325 days before being indicated, and was held in jail for 589 days between his arrest and trial.
¶ 20. The right to a speedy trial attaches at the time of arrest, and for both state and federal constitutional claims, an appellate court applies the four-part balancing test found in Barker v. Wingo, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101, (1972) and Jefferson v. State, 818 So.2d 1099(¶ 11) (Miss.2002). The four Barker factors are (1) the length of the delay, (2) the reason for the delay, (3) the defendant's assertion of his right, and (4) prejudice to the defendant. Barker, 407 U.S. 514 at 530, 92 S.Ct. 2182.
¶ 21. In this case, the length of delay triggers analysis of the other three factors. The State asserts the reason for the delay was a delay in analyzing the DNA evidence, caused by the prosecution's sending the samples to the Mississippi State Crime Lab, which at that time was not performing DNA testing, and the subsequent necessity to obtain private testing. Forrest did not assert his right to a speedy trial *1063 outside of his motion to dismiss with prejudice. While Forrest was not required to bring himself to trial, this factor does not weigh as heavily against the State as it would had he brought a motion to compel a speedy trial. See Jaco v. State, 574 So.2d 625, 632 (Miss.1990). Lastly, while Forrest was certainly prejudiced by the lengthy incarceration without trial, his only contention as to prejudice is to the evidence, and his defense to the charges, was that he was unable to obtain his own expert to assist him in understanding the results of the testing. As discussed in the previous assignment of error, this argument is without merit, because Forrest failed to show how the denial prejudiced his defense. While the length of delay was great, the State's failure to obtain timely testing was not done to purposefully disadvantage Forrest, and Forrest's ability to defend against the charges was not affected. On these facts, there is no showing of a constitutional deprivation of a speedy trial. This issue is without merit.

4. DENIAL OF A MISTRIAL DUE TO THE USE OF THE WORD "RAPE"
¶ 22. The circuit court granted a pre-trial motion by Forrest, to order the State to advise its witnesses not to make statements going to the factual conclusion that a rape occurred. The motion itself broadly requested that all State witnesses refrain from using the word "rape." The circuit court stated that if a witness used the word "rape," it would take necessary corrective action, including dismissal, if that was required.
¶ 23. Forrest asserts that two separate statements by Lorne Phillips, a deputy with the Jones County Sheriff's Department, involving the word "rape" mandated the case be dismissed. First, Phillips stated that when he initially responded to the report of a crime, a security guard at the Laurel-Hattiesburg airport told him two girls approached the building he was working in and "were beating on the window and the door, and he heard them and came and opened the door, and they told them they had been raped. He took them inside and put them in the waiting room." Forrest objected "to the use of that word" asserting that it violated the pre-trial order. The circuit court overruled the objection, without comment. Forrest did not make further argument. The victims had previously testified that Forrest had raped them. The security guard was not asserting that Forrest had raped the victims, but merely telling what happened when he observed the victims.
¶ 24. The second mention of the word "rape" occurred when Phillips was asked what investigation he performed at the airport, and he recounted what the two victims had said to him, and then added "[m]y dispatcher, before she dispatched me to the double rape, was trying to get in touch with." At which point, Forrest again objected, and asked for a mistrial. The circuit court instructed the witness to continue testifying without using the word "rape." Forrest did not request a cautionary instruction. Trial courts are granted discretion in determining if testimony is so prejudicial as to require a mistrial. Johnson v. State, 477 So.2d 196, 209 (Miss. 1985). In this case, nothing suggests such irreparable prejudice that could have denied Forrest a fair trial arose from learning that Phillips was dispatched to "the double rape." The admissibility of testimony is subject to an abuse of discretion standard. Byars v. State, 835 So.2d 965(¶ 6) (Miss.Ct.App.2003). There is no showing of an abuse of discretion in denying the motion for a mistrial. This assertion of error is without merit.

*1064 5. DENIAL OF A MISTRIAL DUE TO THE USE OF THE WORD "KIDNAPPING"
¶ 25. In testifying about the line-ups at which the victims identified Forrest, Black stated that the victims came to the jail "to see if they could pick out the individual who had kidnaped and sexually assaulted them." Forrest was not charged with kidnaping. Forrest objected, and the trial court sustained the objection. Forrest neither requested a cautionary instruction nor moved for a mistrial. Where a trial court sustains an objection, the failure to both request a cautionary instruction and move for a mistrial generally waives the issue. Lockridge v. State, 768 So.2d 331(¶ 23) (Miss.Ct.App.2001). Moreover, even if the issue was not barred, Black's misstatement was an isolated occurrence. Nothing indicates that Forrest was so prejudiced that the jury could not reach a verdict solely on the evidence. See Sanders v. State, 586 So.2d 792, 797 (Miss. 1991). This issue is without merit.

6. TESTIMONY CONCERNING FORREST'S ATTEMPT TO FLEE
¶ 26. When Forrest was apprehended at the El Patio Motel, he initially attempted to flee, but was quickly re-apprehended. While testifying, Black stated that Forrest "did bolt and run-away. Lt. Hutchinson had to chase him down and re-apprehend him." Forrest objected that the testimony was irrelevant and prejudicial, and moved for a mistrial. The circuit court overruled the objection, but instructed the State to move to another line of questioning. The admissibility of testimony is subject to an abuse of discretion standard. Byars, 835 So.2d 965 at (¶ 6). Forrest asserts that the trial court erred in not granting a mistrial and that the fact that Forrest's motel room contained evidence of drug use, gave him a reason to flee without indicating his guilt of the charges. Given the overall testimony in this case, that isolated remark could not have been so prejudicial as to require a mistrial. See, e.g., Johnson, 477 So.2d 196 at 209. This issue is without merit.

7. RESTRICTING THE SCOPE OF CROSS-EXAMINATION OF THE STATE'S EXPERT WITNESS
¶ 27. When N.S. gave the samples for the rape kit, she answered a routine question as to recent sexual contact, and acknowledged consensual sex with her boyfriend sometime during the previous evening before the rape took place in the early morning hours of April 24, 2000. At trial, the circuit court admonished the State, during the defense's cross-examination of the nurse who assisted in collecting the rape kit, for not making timely objections to Forrest's line of questioning, because the circuit court found that the evidence was prohibited by Mississippi Rule of Evidence 412, as evidence of a victim's prior sexual behavior. Both the State and Forrest were of the opinion that the questioning was appropriate, because in their opinion the evidence did not go to prior sexual behavior, but rather the probative value of what scientific conclusions could be drawn from the rape kits and DNA analysis.
¶ 28. The trial Court heard testimony on this issue in chambers. The DNA expert stated that she was unable to state whether N.S. had earlier engaged in sexual intercourse. That relevant testimony is as follows:
The Court: You can't say then that this woman had sex previously?
A. No.
Q. The only thing you found that would indicate that she just had sex with this man? Is that what you are saying?

*1065 A. The major contributor, yes.
¶ 29. The determination of admissibility of evidence is largely left to the discretion of a trial court. Peterson v. State, 671 So.2d 647, 657-58 (Miss.1996). Having received this testimony from the DNA expert the trial court determined the evidence inadmissible.
¶ 30. Under these facts, this Court cannot say that was an abuse of discretion.
¶ 31. This issue is without merit.
¶ 32. THE JUDGMENT OF THE JONES COUNTY CIRCUIT COURT OF CONVICTION OF COUNT IRAPE AND SENTENCE OF LIFE; COUNT IIRAPE AND SENTENCE OF LIFE; AND COUNT IIIAUTO THEFT AND SENTENCE OF FIVE YEARS, WITH ALL SENTENCES TO RUN CONSECUTIVELY, ALL IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS IS AFFIRMED. ALL COSTS OF THE APPEAL ARE ASSESSED TO JONES COUNTY.
McMILLIN, C.J., SOUTHWICK, P.J., BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER AND GRIFFIS, JJ., CONCUR.